# BUNTING v. STATE OF OREGON.

## ERROR TO THE SUPREME COURT OF THE STATE OF OREGON.

No. 38. Argued April 18, 1916; restored to docket for reargument June 12, 1916; reargued January 19, 1917.—Decided April 9, 1917.

Section 2 of the General Laws of Oregon, 1913, c. 102, p. 169, providing that "No person shall be employed in any mill, factory or manufacturing establishment in this State more than ten hours in any one day, except watchmen and employees when engaged in making necessary repairs, or in case of emergency, where life or property is in imminent danger; *provided, however*, employees may work overtime not to exceed three hours in any one day, conditioned that payment be made for said overtime at the rate of time and one-half of the regular wage," is construed as in purpose an hours of service law and as such is upheld as a valid health regulation.

Whether the law could be upheld as a regulation of wages is not considered or decided.

While mere legislative declaration can not give character to a law or turn illegal into legal operation, the court will not ascribe to the legislature an intent to disguise an illegal purpose or the improvidence of effecting one thing while intending another when, as in this case, the purpose as declared in the act (§ 1) and confirmed by the state court is legal and the provisions of the act can be accommodated to it.

The provision for overtime and extra pay is in nature a penalty to deter from excess of the ten-hour limit.

In sustaining a state law passed in the exercise of an admitted power

of government the court need not be sure of the precise reasons for means adopted by the legislature, nor may it pass upon their adequacy or wisdom.

Upon the question whether a ten-hour law is necessary or useful for the preservation of the health of employees in "mills, factories, and manufacturing establishments" the court may accept the judgment of the state legislature and state supreme court, when the record contains no facts to support the contrary contention.

The Oregon law, *supra*, in limiting the hours of employees in "mills, factories, and manufacturing establishments" does not unduly discriminate against their employers as compared with other employers not included in the classification.

71 Oregon, 259, affirmed.

THE case is stated in the opinion.

*Mr. W. Lair Thompson,* with whom *Mr. C. W. Fulton* was on the briefs, for plaintiff in error:

When dealing with subjects which do not affect the public generally, legislation restricting private activities and the enjoyment of private property must be plainly necessary before it can be upheld under the police power. *Hannibal & St. Joseph Ry. Co.* v. *Husen,* 95 U. S. 465. It belongs to the judiciary to determine what are the proper subjects for the exercise of the police power and when the legislative discretion is reasonably employed. *Ruhstrat* v. *People,* 185 Illinois, 133; *Holden* v. *Hardy,* 169 U. S. 366; *Lochner* v. *New York,* 198 U. S. 46. It is not sufficient that the general purpose of the act shall be within the recognized limits of police power, but the means employed to accomplish that purpose must not invade private rights secured by the Federal Constitution. *Connelly* v. *Union Sewer Pipe Co.,* 184 U. S. 540; *Jacobson* v. *Massachusetts,* 197 U. S. 11; *Atchison, Topeka & Santa Fe Ry. Co.* v. *Vosburg,* 238 U. S. 56. Police regulations have not generally been extended to the restriction of the right of contract between employer and employee. *Allgeyer* v. *Louisiana,* 165 U. S. 579; *Coppage* v. *Kansas,* 236 U. S. 1.

Laws regulating hours of employment have been seldom upheld and only in respect of employment directly affecting the welfare, health or safety of the public, or to which the State or one of its subdivisions is a party, or involving unusual danger to the health of the employee. *People* v. *Erie R. R. Company,* 198 N. Y. 369; *Atkins* v. *Kansas,* 191 U. S. 207; *Holden* v. *Hardy,* 169 U. S. 366; *State* v. *Muller,* 208 U. S. 412.

Interference with private labor contracts not affecting the public can only be sustained when reasonably necessary to preserve health, and not unless the court can say that the place or nature of employment is of such unusual danger to health as to demand legislative interference. *Lochner* v. *New York,* 198 U. S. 46; *State* v. *Muller, supra.* If legislative interference with property right is to be sanctioned in every case in which the court cannot say that beyond reasonable doubt such interference will not tend to benefit or protect the health or welfare of a laborer, then the Fourteenth Amendment means nothing in matters of this kind. It is only when the court can say that such regulation is reasonably necessary that the Fourteenth Amendment ceases to inhibit the regulation. Considering those matters of common knowledge, which the court should do (*Jacobson* v. *Massachusetts,* 197 U. S. 11), it may seem hardly conceivable that a law with the broad scope of the Oregon act can be held to be necessary for the preservation of the health of employees in mills, factories and manufacturing establishments. The occupations affected are the ordinary employments of life, and involve only the ordinary dangers to health that accompany manual labor. It can hardly be contended that the man who wheels sacked flour from the mill to the warehouse, or who keeps the books, or deals with the farmer, receiving the grain, works in a position of unusual danger, or that his health will be impaired if he is permitted to work the number of hours his own judgment

dictates, or that he is not of sufficient intelligence to sell his labor without the paternal guidance of a legislative majority.

The law upon its face refutes the contention that it is a health law, or that the recitals of the act in § 1 thereof were deemed true by the legislature. The legislative declaration of necessity, even if the act followed such declaration, is not binding upon this court. *Coppage* v. *Kansas*, 236 U. S. 1; *Minnesota* v. *Barber*, 136 U. S. 313; *Powell* v. *Pennsylvania*, 127 U. S. 678; *Yates* v. *Milwaukee*, 10 Wall. 497. The law is not a ten-hour law; it is a thirteen-hour law designed solely for the purpose of compelling the employer of labor in mills, factories and manufacturing establishments to pay more for labor than the actual market value thereof. It is based upon economic grounds exclusively. The provision for overtime at time and one-half the regular wage robs the law of any argument that might be made to bring it within those grounds that justify an exercise of the police power. Freund, Police Power, §§ 316, 318.

The right of the legislature to regulate wages is denied in *Street* v. *Varney Electrical Supply Co.*, 160 Indiana, 338, and *People* v. *Coler*, 166 N. Y. 1. These decisions are not affected by *Atkin* v. *Kansas*, 191 U. S. 207, and *Heim* v. *McCall*, 239 U. S. 175, which relate to hours of labor in public employments. See also *Low* v. *Rees Printing Co.*, 41 Nebraska, 127, and *Wheeling Bridge & Terminal Ry. Co.* v. *Gilmore*, 8 Ohio Cir. Ct. Rep. 858.

Insufficiency of wage does not justify legislative regulation. The wage has no bearing upon health. Society may not force the employer to pay wages sufficient to support the employee upon the scale of his desire. But this law goes further, fixing the amount arbitrarily. In this case the employee was receiving a regular wage of 40 cents per hour, on its face a living wage, and there was no basis for an arbitrary demand that he be paid 60 cents per

hour for three hours of his time. The effect is to take money from the employer and give it to the laborer without due process or value in return. Although the terms of employment are more important than the selection of the employee, even the right to select cannot be invaded by state dictation. *Adair* v. *United States*, 208 U. S. 161; *Coppage* v. *Kansas*, 236 U. S. 1; *Chicago, Burlington & Quincy Ry. Co.* v. *McGuire*, 219 U. S. 549.

The Oregon act discriminates against plaintiff in error, denying the equal protection of the laws. *Atchison, Topeka & Santa Fe. Ry. Co.* v. *Vosburg*, 238 U. S. 56; Cooley Const. Lim., 7th ed., p. 560.

The provision for extra wages does not aid in the enforcement of the law as an hours-of-service law. The commingling of unlawful methods of execution with a lawful purpose may make an act unconstitutional as effectively as may an unlawful purpose. *Coppage* v. *Kansas*, 236 U. S. 1. The fixing and execution of the overtime pay is an unconstitutional means. Furthermore, it has no reasonable tendency to enforce the declared purpose (distinguishing *Commonwealth* v. *Riley*, 210 Massachusetts, 394; *s. c.*, 232 U. S. 671). The penalty theory is untenable. It involves penalizing an employer for doing the very thing the law authorizes, since the act itself permits employment beyond the ten hours. The purpose and scope are fixed by § 2 where the time and overtime provisions appear together. The penalty for violating that section is provided by § 3, is complete in itself, and uniform for every violation of the act. Penal laws should be strictly construed; a court has no province to superadd a penalty by mere implication. Black on Interpretation of Laws, 2d ed., pp. 455, 471.

The act being unconstitutional in a vital part must fail as a whole. *Low* v. *Rees Printing Co.*, 41 Nebraska, 127.

*Mr. Felix Frankfurter*, with whom *Mr. George M. Brown*, Attorney General of the State of Oregon, and *Mr. J. O.*

*Bailey,* Assistant Attorney General of the State of Oregon, were on the briefs, for defendant in error:

The law is an hours law, not a wage law; the provision for overtime work and extra pay being merely to allow a limited and reasonable flexibility in time of unusual business pressure. The conditions in Oregon, which must be considered in passing on the law, show that this must be so since over 93 per cent. of employers find it unprofitable to employ men beyond ten hours at normal pay. Such provisions for higher rates for overtime are common in the regulation of hours, as is shown by trade agreements in this country and in England. They are necessary to preserve the regulation.

The issue concerning the validity of the law presents the familiar case of application and delimitation of accepted principles. The liberty of the Fourteenth Amendment is set up against the police power of a State. The boundaries must be drawn in each specific case, not by resort to theory and assumption, but in the light of experience, granting to the legislature the function of discerning, detecting and remedying the evils which may be obstacles to the "greater public welfare" (*Rast* v. *Van Deman & Lewis Co.,* 240 U. S. 342) and upholding its judgment if in the light of experience the judgment seems not arbitrary or wanton. Experience in England most strikingly dispelled the old theoretical opposition to limitation of the hours of labor and the preference for unfettered individual competition as an economic principle. The matter has now come to be looked on no longer as a mere contest between capital and labor, but as a concern of the State as an organic whole. The question, therefore, is not whether the State can regulate hours of labor in modern industry, but what evils are manifest, and what tendencies are disclosed, that present a reasonable field for legislative repression; what remedies are available that present a reasonable field for legislative encouragement.

This field of reasonable action is the State's police power. See *Holden* v. *Hardy,* 169 U. S. 366. In *Lochner* v. *New York,* 198 U. S. 45, the state authority in the specific instance was denied because no reasonable relation was discernible to the majority between a ten hour law for bakers and the public welfare. This judgment was based upon a view of the nature of the baker's employment beyond ten hours as known "to the common understanding" *Id.* 59. See Hours of Labor and Realism in Constitutional Law, 29 Harv. L. Rev. 353. It is now clear that "common understanding" is a treacherous criterion both as to the assumptions on which such understanding is based, and as to the evil consequences, if they are allowed to govern. Pound's Liberty of Contract, 18 Yale L. J. 454, 480, note 123; 2 Ely's Property and Contract, 662, 674–5. The subject is one for scientific scrutiny and critique, for authoritative interpretation of accredited facts. To this end science has been devoted all over the world. Particularly in the last decade science has been giving us the basis for judgment by experience to which, when furnished, judgment by speculation must yield. This is precisely what *Holden* v. *Hardy, supra,* looked forward to.

The insight expressed in that case has now been amply justified by experience. What in 1898 presented a specific, and apparently, exceptional instance—the poisoning of the human system through long hours of labor in mines, and the implications of this evil to the general welfare— is now disclosed to be of far wider and deeper application. It is now demonstrable that the considerations that were patent as to miners in 1898 are to-day operative, to a greater or less degree, throughout the industrial system.

It is to this body of experience that the court's attention is invited. It is a mass of data that, partly, was not presented in cases like *Lochner* v. *New York, supra,* but mostly could not have been before the court, because it

was not heretofore in existence. Inasmuch as the application of the contending principles must vary with the facts to which they are sought to be applied, of course new facts are the indispensable basis to the determination of the validity of specific new legislation. *People* v. *Schweinler Press*, 214 N. Y. 395, 412.

The knowledge obtained by the increasing study of industrial conditions is back of the State's policy, as expressed by the legislature, and sustained by the courts of Oregon. These are facts of common knowledge of which this court will take judicial notice. These facts, we submit, conclusively establish that Oregon was exercising a reasonable judgment as to the public welfare in passing its ten-hour law; and so exercising a reasonable judgment it acted within its rightful and constitutional sphere. The place at which it chose to draw the line was peculiarly for the discretion of its legislature. It is sufficient for the present that the line as now drawn—ten hours a day—is not an unreasonable line. *Miller* v. *Wilson*, 236 U. S. 373, 382; *People* v. *Klinck Packing Co.*, 214 N. Y. 121, 128; *State* v. *Bunting*, 71 Oregon, 259, 273.

[In support of the argument counsel's brief presented an extensive systematic review of facts and statistics dealing with the effects of overtime upon the physical and moral health of the worker and so upon the vitality, efficiency and prosperity of the nation, with additional references to experiences and results abroad since the outbreak of the European War. The good effects following regulation and the extent of regulation as shown in American and foreign legislation were also indicated.]

MR. JUSTICE McKENNA delivered the opinion of the court.

Indictment charging a violation of a statute of the State of Oregon, § 2 of which provides as follows:

"No person shall be employed in any mill, factory or

manufacturing establishment in this State more than ten hours in any one day, except watchmen and employees when engaged in making necessary repairs, or in case of emergency, where life or property is in imminent danger; *provided, however,* employees may work overtime not to exceed three hours in any one day, conditioned that payment be made for said overtime at the rate of time and one-half of the regular wage."

A violation of the act is made a misdemeanor, and in pursuance of this provision the indictment was found. It charges a violation of the act by plaintiff in error, Bunting, by employing and causing to work in a flour mill belonging to the Lakeview Flouring Mills, a corporation, one Hammersly for thirteen hours in one day, Hammersly not being within the excepted conditions, and not being paid the rate prescribed for overtime.

A demurrer was filed to the indictment, alleging against its sufficiency that the law upon which it was based is invalid because it violates the Fourteenth Amendment of the Constitution of the United States and the Constitution of Oregon.

The demurrer was overruled; and the defendant, after arraignment, plea of not guilty and trial, was found guilty. A motion in arrest of judgment was denied and he was fined $50. The judgment was affirmed by the Supreme Court of the State. The Chief Justice of the court then allowed this writ of error.

The consonance of the Oregon law with the Fourteenth Amendment is the question in the case, and this depends upon whether it is a proper exercise of the police power of the State, as the Supreme Court of the State decided that it is.

That the police power extends to health regulations is not denied, but it is denied that the law has such purpose or justification. It is contended that it is a wage law, not a health regulation, and takes the property of plaintiff in

error without due process. The contention presents two questions: (1) Is the law a wage law, or an hours of service law? And (2) if the latter, has it equality of operation?

Section 1 of the law expresses the policy that impelled its enactment to be the interest of the State in the physical well-being of its citizens and that it is injurious to their health for them to work "in any mill, factory or manufacturing establishment" more than ten hours in any one day; and § 2, as we have seen, forbids their employment in those places for a longer time. If, therefore, we take the law at its word there can be no doubt of its purpose, and the Supreme Court of the State has added the confirmation of its decision, by declaring that "the aim of the statute is to fix the maximum hours of service in certain industries. The act makes no attempt to fix the standard of wages. No maximum or minimum wage is named. That is left wholly to the contracting parties."

It is, however, urged that we are not bound by the declaration of the law or the decision of the court. In other words, and to use counsel's language, "the legislative declaration of necessity, even if the act followed such declaration, is not binding upon this court. *Coppage* v. *Kansas*, 236 U. S. 1." Of course, mere declaration cannot give character to a law nor turn illegal into legal operation, and when such attempt is palpable this court necessarily has the power of review.

But does either the declaration or the decision reach such extreme? Plaintiff in error, in contending for this and to establish it, makes paramount the provision for overtime; in other words, makes a limitation of the act the extent of the act—indeed, asserts that it gives, besides, character to the act, illegal character.

To assent to this is to ascribe to the legislation such improvidence of expression as to intend one thing and effect another, or artfulness of expression to disguise illegal purpose. We are reluctant to do either and we think all

the provisions of the law can be accommodated without doing either.

First, as to plaintiff in error's attack upon the law. He says: "The law is not a ten-hour law; it is a thirteen-hour law designed solely for the purpose of compelling the employer of labor in mills, factories and manufacturing establishments to pay more for labor than the actual market value thereof." And further: "It is a ten-hour law for the purpose of taking the employer's property from him and giving it to the employé; it is a thirteen-hour law for the purpose of protecting the health of the employé." To this plaintiff in error adds that he was convicted, not for working an employee during a busy season for more than ten hours, but for not paying him more than the market value of his services.

The elements in this contention it is difficult to resolve or estimate. The charge of pretense against the legislation we, as we have already said, cannot assent to. The assumption that plaintiff in error was convicted for not paying more in a busy season than the market value of the services rendered him or that under the law he will have to do so, he gives us no evidence to support. If there was or should be an increase of demand for his products, there might have been or may be an increase of profits. However, these are circumstances that cannot be measured, and we prefer to consider with more exactness the overtime provision.

There is a certain verbal plausibility in the contention that it was intended to permit 13 hours' work if there be 15½ hours' pay, but the plausibility disappears upon reflection. The provision for overtime is permissive, in the same sense that any penalty may be said to be permissive. Its purpose is to deter by its burden and its adequacy for this was a matter of legislative judgment under the particular circumstances. It may not achieve its end, but its insufficiency cannot change its character

from penalty to permission. Besides, it is to be borne in mind that the legislature was dealing with a matter in which many elements were to be considered. It might not have been possible, it might not have been wise, to make a rigid prohibition. We can easily realize that the legislature deemed it sufficient for its policy to give to the law an adaptation to occasions different from special cases of emergency for which it provided, occasions not of such imperative necessity, and yet which should have some accommodation—abuses prevented by the requirement of higher wages. Or even a broader contention might be made that the legislature considered it a proper policy to meet the conditions long existent by a tentative restraint of conduct rather than by an absolute restraint, and achieve its purpose through the interest of those affected rather than by the positive fiat of the law.

We cannot know all of the conditions that impelled the law or its particular form. The Supreme Court, nearer to them, describes the law as follows: "It is clear that the intent of the law is to make 10 hours a regular day's labor in the occupations to which reference is made. Apparently the provisions for permitting labor for the overtime on express conditions were made in order to facilitate the enforcement of the law, and in the nature of a mild penalty for employing one not more than three hours overtime. It might be regarded as more difficult to detect violations of the law by an employment for a shorter time than for a longer time. This penalty also goes to the employee in case the employer avails himself of the overtime clause."

But we need not cast about for reasons for the legislative judgment. We are not required to be sure of the precise reasons for its exercise or be convinced of the wisdom of its exercise. *Rast* v. *Van Deman & Lewis Co.*, 240 U. S. 342, 365. It is enough for our decision if the legislation under review was passed in the exercise of an admitted power of government; and that it is not as complete as

it might be, not as rigid in its prohibitions as it might be, gives perhaps evasion too much play, is lighter in its penalties than it might be, is no impeachment of its legality. This may be a blemish, giving opportunity for criticism and difference in characterization, but the constitutional validity of legislation cannot be determined by the degree of exactness of its provisions or remedies. New policies are usually tentative in their beginnings, advance in firmness as they advance in acceptance. They do not at a particular moment of time spring full-perfect in extent or means from the legislative brain. Time may be necessary to fashion them to precedent customs and conditions and as they justify themselves or otherwise they pass from militancy to triumph or from question to repeal.

But passing general considerations and coming back to our immediate concern, which is the validity of the particular exertion of power in the Oregon law, our judgment of it is that it does not transcend constitutional limits.

This case is submitted by plaintiff in error upon the contention that the law is a wage law not an hours of service law, and he rests his case on that contention. To that contention we address our decision and do not discuss or consider the broader contentions of counsel for the State that would justify the law even as a regulation of wages.

There is a contention made that the law, even regarded as regulating hours of service, is not either necessary or useful "for preservation of the health of employés in mills, factories and manufacturing establishments." The record contains no facts to support the contention, and against it is the judgment of the legislature and the Supreme Court, which said: "In view of the well-known fact that the custom in our industries does not sanction a longer service than 10 hours per day, it cannot be held, as a matter of law, that the legislative requirement is unreasonable or arbitrary as to hours of labor. Statistics

show that the average daily working time among working-men in different countries is, in Australia, 8 hours; in Great Britain, 9; in the United States, 9¾; in Denmark, 9¾; in Norway, 10; Sweden, France, and Switzerland, 10½; Germany, 10¼; Belgium, Italy, and Austria, 11; and in Russia, 12 hours."

The next contention of plaintiff in error is that the law discriminates against mills, factories and manufacturing establishments in that it requires that a manufacturer, without reason other than the fiat of the legislature, shall pay for a commodity, meaning labor, one and one-half times the market value thereof while other people purchasing labor in like manner in the open market are not subjected to the same burden. But the basis of the contention is that which we have already disposed of, that is, that the law regulates wages, not hours of service. Regarding it as the latter, there is a basis for the classification.

Further discussion we deem unnecessary.

*Judgment affirmed.*

The CHIEF JUSTICE, MR. JUSTICE VAN DEVANTER and MR. JUSTICE McREYNOLDS, dissent.

MR. JUSTICE BRANDEIS took no part in the consideration and decision of the case.