AMERICAN FEDERATION OF LABOR et al. v. WATSON, Attorney General, et al.

Civil Action No. 881.

District Court, S. D. Florida,
Tampa Division.

June 11, 1945.

Pat C. Whitaker and Tom Whitaker, both of Tampa, Fla., Joseph A. Padway and Herbert S. Thatcher, both of Washington, D. C., Edwin C. Coffee, of Jacksonville, Fla., and J. Dress Pannel, of Harrisburg, Pa., for plaintiffs.

J. Tom Watson, Atty. Gen., of Florida, and Howard S. Bailey, Sumter Leitner and George M. Powell, Asst. Attys. Gen. of Florida, for defendants.

Before WALLER, Circuit Judge, and BARKER and DE VANE, District Judges.

WALLER, Circuit Judge.

The 1943 session of the Legislature submitted to the people of Florida the following amendment as an addition to Section 12 of the Declaration of Rights of their Constitution:

"The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union, or labor organization; provided, that this clause shall not be construed to deny or abridge the right of employees by and through a labor organization or labor union to bargain collectively with their employer."

The people, at the General Election of 1944, adopted the proposed amendment.

The American Federation of Labor, other State and national labor unions affiliated therewith, certain individuals suing as such and in their capacities as presidents of certain local unions, and certain corporate and individual employers of labor in Florida, all as plaintiffs and representatives of a class, brought suit in the United States District Court for the Southern District of Florida, Tampa Division, against the Attorney General and the Governor, as well as the State Attorney, County Solicitor, and Sheriff of Hillsborough County, as defendants and representatives of a class, and also against certain corporations named as nominal defendants, asserting that said amendment was in conflict with several provisions of the Federal Constitution and statutes and praying temporary and permanent injunctions against the defendants in said suit.

The District Judge granted the temporary restraining order and caused this three-judge court to be assembled.

Jurisdiction of the Federal Court was predicated upon the allegations that the suit arises under Section 10 of Article 1, Article VI, and the First and Fourteenth Amendments to the Constitution of the United States as authorized by Section 41(1) of Title 28, U.S.C.A., and that it is also a suit for redress for the deprivation of civil rights as permitted by Section 41(14) of Title 28, and Section 43 of Title 8, U.S.C.A. Jurisdiction of the three-judge Court is asserted under Section 380, Title 28, U.S.C.A.

The motion of the Attorney General of Florida to dismiss presents the legal issues upon which the case has been heard and which form the basis of the controversy, to wit:

I. Whether the allegations of the complaint are sufficient to vest jurisdiction in the District Court of the United States:

(a) As a controversy arising under the Constitution and the laws of the United States involving an amount in excess of $3,000 under Section 41(1) of Title 28, U.S.C.A.; or

(b) As a suit for the redress of the deprivation of civil rights under Section 41(14) of Title 28, U.S.C.A. or Section 43 of Title 8, U.S.C.A., under which sections

the amount in controversy is not material to a suit; and

(c) Even if the District Court of the United States has jurisdiction under either of the aforementioned sections, whether a case for the convening and consideration of a three-judge Court under Section 380, Title 28, U.S.C.A., has been shown.

II. Whether the amended section of the Constitution of the State of Florida deprives the plaintiffs of any rights under the following provisions of the Constitution and laws of the United States:

(a) Section 10 of Article I of the Federal Constitution, prohibiting any state from passing any law impairing the obligation of contracts;

(b) Article VI of the Federal Constitution, providing that the Constitution, and laws of the United States which are made in pursuance of the Constitution, shall be the supreme law of the land;

(c) The First Amendment of the Constitution of the United States prohibiting Congress from making any law abridging the freedom of speech or of the press or the right of the people peaceably to assemble and to petition the Government for redress of grievances;

(d) The Fourteenth Amendment, which prohibits any state from making or enforcing any law abridging the privileges or immunities of citizens of the United States or from depriving any person of life, liberty, or property without due process of law or from denying to any person the equal protection of the law;

(e) Sections 151 to 166 of Title 29, U.S.C.A., commonly known as the National Labor Relations Act.

III. Whether or not the allegations of fact in the complaint, as distinguished from conclusions of law, show irreparable injury on the part of the plaintiffs, or either of them.

IV. Whether or not the plaintiffs, or any of them, are entitled to maintain a suit for the deprivation of civil rights under the Constitution and laws of the United States.

V. Whether or not the constitutional amendment is a valid and lawful exercise of the police power reserved to the State under the Constitution.

VI. Whether or not there is any conflict between the provisions of the National Labor Relations Act and said constitutional amendment.

There are certain minor, and more or less collateral, questions as to the propriety or legality of joining certain parties as plaintiffs making certain others defendants,[1] nominal or otherwise, but in contrast to the importance of the issues presented here it seems unnecessary to give them particular attention. We prefer to come as promptly as possible to the real issues in the case, with the idea of expediting the progress of this case to the Supreme Court, knowing full well that what we here say will not be long remembered.

■ We are of the opinion that under the allegations of the complaint the United States District Court for the Southern District of Florida, as distinguished from a three-judge Federal District Court, has jurisdiction under the allegation that the suit arises under the Constitution and laws of the United States and where the amount in controversy is required to exceed $3,000, exclusive of interest and costs,[2] and that such Court also has jurisdiction of the controversy as a suit to redress alleged deprivation of civil rights under Section 43 of Title 8 and section 41(14) of Title 28, U.S.C.A.

The question of whether or not a three-judge Court has jurisdiction is more difficult. The controlling statute is Section 380 of Title 28, U.S.C.A., which prohibits a single District Judge from entering an "interlocutory injunction suspending or restraining the enforcement, operation, or execution of any statute of a State by restraining the action of any officer of such State in the enforcement or execution of such statute, * * *." (Emphasis added.) Nothing is said in this statute as to restraining the enforcement of a provision in the constitution of a state. There is, of course, a wide distinction between a constitutional amendment, adopted by the people, and a statute passed by the Legislature. A mere majority of the Legislature

---

[1] Rule 17(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides:

"That a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States."

[2] See Form 2 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, as to allegation of amount in controversy.

**1014**

may enact a statute, with the Governor's approval, but it takes three-fifths of the members of both Houses of the Legislature of Florida even to propose an amendment to the Constitution, and the proposed amendment must then be published in a newspaper in every county of the state for three months before the next general election, and at which it must receive a majority of those voting thereon in order to become a part of the organic law of the state. Article 17, Section 1, Constitution of the State of Florida. A state statute is an inferior source of law to that of a state constitution and cannot stand in opposition to it.

■ United States District Courts are courts of limited jurisdiction, and particularly is this true of a three-judge Court. It is wholly statutory and all questions as to its jurisdiction must be strictly construed. Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800.

■ Cognizant that a three-judge Court is without jurisdiction to grant an injunction in a case involving a municipal ordinance which is alleged to be unconstitutional[3] and that the same is true where an injunction is sought against a state statute which is not statewide in its scope,[4] we entertain grave doubt as to whether or not we, as a three-judge Court, have jurisdiction of the case here for the reason that the constitutionality of no statute of the State of Florida is involved. Were it not for certain language in the case of Phillips v. United States, supra, and an appreciation of the fact that the dictum of today may, perhaps, be the law of tomorrow, we would hold that this Court is without jurisdiction. In the Phillips case neither the State Constitution nor statutes were under attack, but only the acts of the Governor which had been done under color of general provisions of the Constitution and laws of Oklahoma; however, the Supreme Court said that in order to bring the procedural device of the three-judge Court into play a suit is required "which seeks to interpose the Constitution against the enforcement of a state policy, whether such policy is defined in a state constitution or in an ordinary statute or through the delegated legislation of an 'administrative board or commission'" [312 U.S. 246, 61 S.Ct. 483], although the statute mentions neither state constitutions nor state policies, nevertheless the Court held that the law in reference to the jurisdiction of the three-judge Court could not be liberally construed but could only be construed "as an enactment technical in the strict sense of the term and to be applied as such." The decision inveighed against stretching the three-judge Court statute, meanwhile apparently stretching it to include state constitutions and state policies. As we interpret the language in the Phillips case the scope of the three-judge Court statute has been enlarged from an injunction restraining the enforcement of "any statute of a State" to the "enforcement of a state policy, whether such policy is defined in a state constitution or in an ordinary statute" So in conformity to the inharmonious language in the Phillips case, quoted above, we hold that a three-judge Court has jurisdiction. We doubt not that the statute ought to have prohibited a single judge from enjoining action under a state constitution, for it seems incongruous that a single judge should be able to enjoin action under a constitutional provision but that he could not do so under a state statute.

■ The motion to dismiss, admitting all of the facts appropriately alleged in the complaint, but not legal conclusions, presents three important legal questions:

1. Is the Florida constitutional amendment in violation of any provisions of the Federal Constitution?

2. Is the constitutional amendment a valid exercise of the police power of the State of Florida?

3. Is the constitutional amendment in conflict with the provisions of any Federal statutes which were enacted within the power delegated to Congress?

No substantial question of fact is involved requiring the taking of testimony or the making of express findings of facts.

■ The authority of the United States is supreme on all subjects which the Constitution has committed to it, and a state constitution, like a state statute, must fall if it is contrary to any provisions of the Federal organic law,[5] or if it is in conflict

---

[3] Ex parte Collins, 277 U.S. 565, 48 S. Ct. 585, 72 L.Ed. 990.

[4] H. C. Rorick v. Board of Commissioners of Everglades Drainage District, 307 U.S. 208, 59 S.Ct. 808, 83 L.Ed. 1242.

[5] "The very purpose of the Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to estab-

with any provisions of the Federal statutes that were enacted within the scope of the power conferred upon Congress by the Constitution.[6]

■ The wording of the Florida Constitutional amendment is difficult, but it definitely does not violate the First Amendment by abridging freedom of speech or of the press or of the right of assembly, or the right of petition to the Government for redress. The assaulted amendment undertakes to preserve to employees, in full vigor, the right of collective bargaining. Instead of preventing or abridging the rights of speech, press, assembly, and petition, the amendment seeks to preserve it to those who do not join a labor union as well as to those who do. This amendment has no similarity to anti-picketing statutes or statutes which require the payment of a license by a labor organizer. The amendment is not in violation of the First Amendment to the · Federal Constitution. The same is true of the allegations as to its violation of the Fourteenth Amendment. There is no prohibition against a citizen belonging to any union that he chooses, but the prohibition seems to be against requiring membership in the union in order for a citizen to be eligible for work. Under statutes of the United States, such as Section 102, Title 29, U.S.C.A., a citizen is declared to be free to join a union or not, and one of the purposes of that statute, as well as the National Labor Relations Act, was to accord to employees full freedom to belong, or not to belong, to a union. The Florida constitutional amendment prohibits no one from joining a union but undertakes to declare that it shall not be a condition precedent to the right to work. It does not deny the labor union member the equal protection of the law, but appears to be designed to give to the non-union worker a protection of law which he had not theretofore enjoyed.

■ There is no vested right to have the police power of a state remain static. Every contract, involving subject matter that affects the public interest, into which a citizen may enter, is subject to the right of a state to regulate or to prohibit whenever it is deemed by the state to be essential in the public interest, and when it violates no provision of the superior national or state law. Contracts entered into prior to state and Federal prohibition against the manufacture or sale of intoxicating liquor were not held to have been illegally impaired by the adoption of prohibition when the states, and subsequently the nation, deemed prohibition to be in the public interest.

There are general allegations in the complaint as to contracts entered into prior to the amendment and alleged to have been impaired by it, but even if these allegations meet the requirements for definiteness and specificity in order to call forth the injunctive processes of the Court, the question first to be answered would be whether or not the state was without authority in the exercise of its police power to adopt the amendment in question.

There are certain principles relating to the police power of the states so axiomatic as not to need a statement as to their source, that might well be restated here.[7]

■ 1. The United States is a government of limited, enumerated, and delegated powers, having only such authority as has been granted to it by the Constitution or necessarily implied therefrom.

■ 2. In construing a law of the United States we look to see if power has been granted, but in construing a law of the state we look to see if it has been prohibited, realizing that all attributes of the government that have not been surrendered by the adoption of the Federal Constitution and its amendments have been retained by the state.

■ 3. It is fundamental that state laws must yield to the superior force of Federal laws which were passed within the sphere of delegated powers. However, a state law is superseded by a congressional

lish them as legal principles to be applied by the court. One's right to life, liberty, and property, free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections." Justice Jackson in West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.

Ct. 1178, 1185, 87 L.Ed. 1628, 147 A. L.R. 674.

[6] Article VI, U. S. Constitution; Panhandle Oil Co. v. Mississippi, 277 U.S. 218, 48 S.Ct. 451, 72 L.Ed. 857, 56 A. L.R. 583.

[7] See discussions in 11 Amer.Jur., Const.Law., Police Power, Sec. 245, et seq.

law only to such an extent as the two are inconsistent.

4. An act passed under the police power of a state cannot be cast aside as inconsistent with an act of Congress unless there is an actual repugnancy or a complete taking over of the legislative field by Congress, and the rule has been laid down that a state statute is in conflict with a Federal statute when one may incur the penalty of the Federal statute by obeying the state statute, or vice versa.

5. The police power of a state is very broad and comprehensive and is liberally understood and applied. This principle is so well recognized and the police power is of such elasticity that the principle of stare decisis has no application to an exercise of this power. This position is justified, for if it were not thus mistaken decisions might destroy the power of society to protect itself. The state cannot contract away its police power[8] and the courts cannot decide away that which the state itself cannot contract away.

6. The courts cannot create a new Constitution. Laws and court-made rules of expediency must not be placed above the Constitution.

7. Labor and labor unions are affected with a public interest and are subject to the regulatory power of the states for any reasonable regulation which will not be inconsistent with the Constitution of the United States and statutes enacted within the scope delegated by the Constitution to the Congress.

8. Collective bargaining, self-organization, and other kindred union activities necessarily involve the rights of free speech, freedom of the press, freedom of assembly, and freedom of petition, which may not be denied by state statute or constitution, but we also must recognize that the total of union activity is directed toward economic objectives which involve purely commercial activities and which may be regulated by the state upon any reasonable basis when not in conflict with superior law.

9. The very existence of the state as well as "the security of the social order, the life and health of the citizen, the comfort of existence in a thickly populated community, the enjoyment of private and social life, and the beneficial use of property,"[9] depend upon the police power of that state.

10. "The powers are not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."[10] The states existed before the Constitution of the United States, and they possessed the police power before the adoption of that organic document,[11] and that police power was not by the Constitution delegated to the United States, and hence under the Tenth Amendment it is reserved in the states or in the people.

11. There is, in the strict sense, no Federal police power.

12. Rule by the majority is the essence of democracy. Members of a labor union are citizens first and subject to the will of the majority, lawfully exercised, and where that will has been exercised by a direct expression of the people at the polls the result is the fullest exercise of the democratic process and the fullest expression of the source of all political power—the people. "All rights are derived from the purposes of the society in which they exist; above all rights rises duty to the community." Dissenting opinion of Justice Brandeis in Duplex Co. v. Deering, 254 U. S. 443, 41 S.Ct. 172, 184, 65 L.Ed. 349, 16 A.L.R. 196.

13. The wisdom or lack of wisdom of a state statute or of a provision in a state constitution is not a matter for the courts. The people, through their representatives in the Legislature and through their vote for an amendment to their constitution, have the right to commit folly if they please, provided it is not prohibited by the Federal Constitution or antagonistic to Federal statutes authoritatively enacted concerning the matter involved. "The conditions developed in industry may be such that those engaged in it cannot continue their struggle without danger to the community. But it is not for judges to determine whether such conditions exist, nor is it their function to set the limits of per-

---

[8] Stone v. Mississippi, 101 U.S. 814, 25 L.Ed. 1079.

[9] Slaughterhouse cases, 16 Wall. 36, 21 L.Ed. 394.

[10] Tenth Amendment, Federal Constitution.

[11] Mayor, Aldermen and Commonalty of City of New York v. Miln, 11 Pet. 102, 9 L.Ed. 648.

missible contest and to declare the duties which the new situation demands." Dissenting opinion of Justice Brandeis in Duplex Co. v. Deering, supra.

14. It is the duty of the court to indulge in the presumption that the amendment is not in conflict with the organic law unless the contrary is clearly made to appear.

A consideration of these fundamental concepts impels the conclusion that the Florida constitutional amendment does not contravene any provision of the Federal Constitution and for aught that now appears it is a valid exercise of the police power of the State of Florida. Definitely labor unions are affected with a public interest as exemplified by the National Labor Relations, the Norris-LaGuardia, and Fair Labor Standards Acts, 29 U.S.C.A. §§ 151 et seq., 101 et seq., and 201 et seq., passed by Congress in and about the regulation of interstate commerce, and by numerous acts by state legislatures regulating labor unions in phases not embraced within the scope of the power of the national Congress.

In view of the fact that no labor legislation by Congress has required an employee to belong to a labor union or has made the closed shop mandatory, but on the contrary the Federal public policy in regard to compulsory membership in labor unions is stated in Section 102 of Title 29, U.S.C.A., as follows:

" * * * the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though *he should be free to decline to associate with his fellows,* it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, * * *." (Emphasis supplied.)

and in view of the provisions of the Florida amendment that it shall not be construed to deny or abridge the right of employees by and through a labor union to bargain collectively with an employer, there does not appear to be any provision of the Federal labor regulatory statutes with which the constitutional amendment collides. So long as the right to organize into a union and to bargain collectively' is not abridged, there is no denial of freedom of speech, press, assembly, and petition. Whatever was traditionally a part of the process of collective bargaining seems to have been left unabridged by the second clause in the amendment.

The amendment makes it possible for the non-union worker to have "a free ride", that is, to have the benefit of the gains and advantages that have accrued through the planning, the effort, the expense, the struggle, and the influence of the unions, without bearing any of their burdens, but this permissive incidence of poor sportsmanship is not new in the law. A substantial portion of the population in many communities have all the benefits of government, yet pay no taxes. Occasions are not singular when free riders in government are the recipients of its greatest solicitude, and the fact that the law gives an unearned advantage to the dissident or disinterested is but slightly dissimilar to the building of a school house largely from taxes paid by corporations which have no children to educate. This ground of objection was one for the Legislature and the people rather than the courts.

It will be observed that the constitutional amendment is not self-executing and no enforcing legislation has been enacted. No prosecution under a criminal statute is involved, and although the Attorney General contends that a closed shop was illegal under Section 1 of Chapter 4144, Laws of Florida, Acts of 1893 (Sec. 833.02, Florida Statutes, 1941, F.S.A.), nevertheless, it is noted that the Supreme Court of Florida, in the case of Jetton-Dekle Lumber Co. v. Mather et al., 53 Fla. 969, 43 So. 590, held that the Act "will not be applied to the case of union laborers who strike in order to secure all the labor for themselves," which seems to say that the statute did not prohibit a closed shop. This decision under Erie R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, is binding upon the Federal Court.

A three-judge court cannot be convened merely to prevent a multiplicity of suits in the state courts by the Attorney General against employers of labor. But it does not seem necessary for us to determine whether or not irreparable injury to plaintiffs can result, nor do we here undertake to decide what complications might arise out of the operations of the National Labor Relations Act and the Florida con-

stitutional amendment, but deem it necessary only to say that the Federal Act and the amendment on their face do not appear to be in conflict, and it will be time enough to judge of such conflicts if and when they actually arise. This is not an action for a declaratory judgment but an injunction suit in anticipation of irreparable injury.

From the foregoing it appears that the temporary injunction granted herein should be dissolved and vacated, and the motion of the Attorney General to dismiss the complaint should be sustained.

Let an appropriate order be submitted.