*MASCARI *et al. v.* INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA (AFL) LOCAL UNION No. 667 *et al.*

(*Nashville,* December Term, 1947.)

Opinion filed February 28, 1948.

On Rehearing April 15, 1948.

*Appeal dismissed, 335 U. S. 907, 69 S. Ct. 410, 93 L. Ed. —.

346.

Robert A. Tillman, of Memphis, and Herbert S. Thatcher, of Washington, D. C., for appellants.

Newell N. Fowler and Chas. A. Johnston, both of Memphis, for appellees.

Mr. Justice Prewitt delivered the opinion of the Court.

The bill in this cause was filed by complainants, Joe Mascari and others, who are engaged in the wholesale distribution of produce in the city of Memphis and adjacent territory, seeking an injunction against the defendants to prevent the illegal calling of a strike.

Prior to the enactment of Chapter 36 of the Public Acts of 1947, there existed a contract between complainants and defendants provided for what is generally termed a closed shop. The Act referred to is known as the Tennessee Open Shop Law and reads as follows:

"An Act to prohibit and make unlawful the exclusion from employment of any person by reason of membership in, affiliation with, resignation from, or refusal to join or affiliate with any labor union or employee organization; and to provide penalties for the violation of said Act.

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, That it shall be unlawful for any person, firm, corporation or association of any kind to deny or attempt to deny employment to any person by reason of such person's membership in, affiliation with, resignation from, or refusal to join or affiliate with any labor union or employee organization of any kind.

"Sec. 2 Be it further enacted, That it shall be unlawful for any person, firm, corporation or association of any kind to enter into any contract, combination or agreement, written or oral, providing for exclusion from employment of any person because of membership in, affiliation with, resignation from, or refusal to join or affiliate with any labor union or employee organization of any kind.

"Sec. 3. Be it further enacted, That it shall be unlawful for any person, firm, corporation or association of any kind to exclude from employment any person by reason of such person's payment of or failure to pay dues, fees, assessments, or other charges of any labor union or employee organization of any kind.

"Sec. 4. Be it further enacted, That the provisions of this Act shall not apply to any lawful contract in force

on the effective date of this Act; but shall apply in all respects to contracts entered into thereafter, and to any renewal or extension of any existing contract.

"Sec. 5. Be it further enacted, That any person, firm, corporation or association of any kind violating any of the provisions of this Act shall be guilty of a misdemeanor, and upon conviction therefor, shall be punishable by a fine of not less than One Hundred ($100.00) Dollars and not more than Five Hundred ($500.00) Dollars; and in addition thereto by imprisonment in the County Jail for a period of less than twelve (12) months, in the discretion of the Court. Each day that any person, firm, corporation or association of any kind remains in violation of any of the provisions of this Act shall be deemed to be a separate and distinct offense, punishable in accordance with the provisions of this Section.

"Sec. 6. Be it further enacted, That if any part, clause or Section of this Act shall be unconstitutional, it shall not affect any other part or provision hereof.

"Sec. 7. Be it further enacted, That this Act shall take effect from and after its passage, the public welfare requiring it."

A temporary injunction was granted. The defendants filed an answer, and the cause was heard on bill and answer. The answer contains the statement that the defendants "are willing to admit, for the purposes of this suit only, that the only matter in dispute between the parties was that of the union shop."

The determinative question between complainants and defendants in their negotiations for the execution of a new contract is: Complainants are willing to insert a clause in the new contract which shall provide that if the Act in question be held unconstitutional, the union

shop and checkoff provisions of the contract between the parties be reinstated or reinserted in the provisions of the contract, but that in the meantime they shall not constitute a part of the contract; while defendants contend that the new contract shall contain provisions that the union shop and checkoff features of the contract be in full force and effect between the parties, as in the old or existing contract, and if said Act be declared constitutional, such clause shall cease to be effective as between the parties.

The answer of defendants sets out several contentions for claiming that the Act is unconstitutional. However, the real question is whether the Act violates the due process of law clause contained in the Fourteenth Amendment to the Constitution of the United States and in Article 1, section 8, of the Constitution of Tennessee. These provisions are substantially the same in effect and result.

The phrase "equal protection of the laws" is not susceptible of exact definition, and each case must be decided upon the facts involved. The guiding principle most often stated by the courts is that this constitutional guaranty requires that all persons shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed. 12 Am. Jur., Constitutional Law, sec. 469.

The defendants rely on the case of *Motlow* v. *State*, 125 Tenn. 547, 145 S. W. 177, L. R. A. 1916F, 177, where it was held that the due process of law clause contained in the State and Federal Constitutions are substantially identical. In that case the question under consideration was a statute prohibiting the manufacture and sale of intoxicating liquors. The Court held that if there

was any justifiable reason for the creation of a classification it was not an arbitrary act, and said:

"The principles on which the inquiry should be conducted are those laid down in a very recent opinion of the Supreme Court of the United States, in *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 31 S. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160: '(1) The equal protection clause of the fourteenth amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore it is purely arbitrary. (2) A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality. (3) When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. (4) One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.'" 125 Tenn. pages 559, 560, 145 S. W. page 188.

■ Can it be reasonably contended that this law discriminates against union members and in favor of nonunion members? Each group is given the same protection and the same right. The "right to work" is guaranteed to all whether they be members or nonmembers of a union. Is not this equality? Funk and Wagnalls New Standard Unabridged Dictionary defines "equality" as "uniformity of state or action; equability; justice; impartiality."

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In *Campbell* v. *McIntyre*, 165 Tenn. 47, 52 S. W. (2d) 162, the Court held invalid a law regulating the vocation of public accountants, and quoted and reiterated the rules of construction adopted and approved in *Motlow* v. *State, supra,* but held the particular Act in question invalid because its provisions constituted an unreasonable and arbitrary restriction on the right of private contract.

▮▮ The defendants contend that this is the objection to the Act in question. However, the Act now before us operates to make the field of employment open to all, while in the *Campbell Case* the Act undertook to restrict the right of employment to a favorite group.

Defendants ignore the effect of the Act in question in taking the position that it is aimed directly at labor unions. On the contrary, the purpose of the Act in question was intended to outlaw discriminations against union men as well as nonunion men. The Act protects all employees of the State who work for a livelihood and gives all of them an opportunity to express their own wishes and desires.

▮▮ The restraints which the Fourteenth Amendment has placed upon the use of its police power by a state are pointed out in *Nebbia* v. *People of State of New York,* 291 U. S. 502, 523, 524, 54 S. Ct. 505, 510, 78 L. Ed. 940, 948, 949, 89 A. L. R. 1469, as follows:

"Under our form of government the use of property and the making of contracts are normally matters of private and not of public concern. The general rule is that both shall be free of governmental interference. But neither property rights nor contract rights are absolute; for government cannot exist if the citizen may at will use his property to the detriment of his fellows, or

exercise his freedom of contract to work them harm. Equally fundamental with the private right is that of the public to regulate it in the common interest.''

The Supreme Court of the United States has sustained, as valid exercise of this power, the statutes providing for maximum hours (*Bunting* v. *State of Oregon*, 243 U. S. 426, 37 S. Ct. 435, 61 L. Ed. 830, Ann. Cas. 1918A, 1043), workmen's compensation (*New York Central R. Co.* v. *White*, 243 U. S. 188, 37 S. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D, 1 Ann. Cas. 1917D, 629), and prohibiting intimidation of employees (*People* v. *Washburn*, 285 Mich. 119, 280 N. E. 132, 123 A. L. R. 311, appeal denied 305 U. S. 577, 59 S. Ct. 355, 83 L. Ed. 363).

In the recent case of *State* v. *Whitaker et al.*, 45 S E. (2d) 860, 871, the Supreme Court of North Carolina, in upholding a statute similar in many respects to the statute now under consideration, said in part:

''At this writing 15 states have been called to our attention in which laws have been adopted prohibiting closed shops, either by constitutional amendment or by legislative act. . . . Great weight must be attached to the fact that so many separate jurisdictions have, within a short space of time, seen fit to exercise their police power in the same manner and for the same purposes. The composite will of such a broad cross section of our country cannot be lightly discarded as unreasonable, arbitrary or capricious or lacking in substantial relationship to its objective. 'Since government is not an exact science, prevailing public opinion concerning the evils and the remedy is among the important facts deserving consideration, particularly when the public conviction is both deep-seated and widespread and has been reached after deliberation.'''

■■ The reasonableness of the exercise of the police power of a state must be considered in the light of the economic conditions existing at the time of the enactment. In forbidding the deprivation of liberty without due process of law, the Constitution does not recognize an absolute and uncontrollable liberty, but a safeguarded liberty, in a social organization which requires the protection of law against the evils which menace the health, safety, morals, and welfare of the people.

The Act before us in substance prohibits an employer from discriminating against any employee, present or future, because of his membership or nonmembership in a labor organization. It further prohibits an employer and a union from entering into any contract or agreement, written or oral, by the terms of which an employee or prospective employee would be discriminated against because of his membership or nonmembership in a labor organization

To argue that the Legislature had the right to protect employees against discrimination because of membership in a labor organization, and at the same time be prohibited from protecting an employee because of his nonmembership in a labor organization, would violate the guarantees of equal protection under the Constitution.

■ It is charged that the nonunion member is allowed the benefits of the union activity without being required to contribute to the support and maintenance of the union. This contention is completely answered in *American Federation of Labor* v. *Watson*, D. C., 60 F. Supp. 1010, 1017, reversed on procedural grounds, 327 U. S. 582, 66 S. Ct. 761, 90 L. Ed. 873, where the three-judge Federal Court, in upholding the Closed Shop Amendment to the Constitution of Florida, Const. Declaration of Rights, section 12, said:

"The amendment makes it possible for the nonunion worker to have 'a free ride', that is, to have the benefit of the gains and advantages that have accrued through the planning, the effort, the expense, the struggle, and the influence of the unions, without bearing any of their burdens, but this permissive incidence of poor sportsmanship is not new in the law. A substantial portion of the population in many communities have all the benefits of government, yet pay no taxes. Occasions are not singular when free riders in government are the recipients of its greatest solicitude, and the fact that the law gives an unearned advantage to the dissident or disinterested is but slightly dissimilar to the building of a school house largely from taxes paid by corporations which have no children to educate. This ground of objection was one for the Legislature and the people rather than the courts."

One of the fundamental principles on which our Government was founded is that of equality of right, and this principle is emphasized in the "equal protection of the laws" clause of the Constitution. Rich and poor, majority and minority groups, are to be given equal rights under it.

A legislative enactment or a state constitutional requirement which provides that no person shall be denied employment because of membership or nonmembership in a labor union, does not violate the "equal protection of the laws" clause of the Constitution but on the contrary guarantees equality to all employees, as well as to all groups of employees, whether they be majority or minority groups. It secures equality of protection for all.

Ours is a dual system of Government and oftentimes Congress legislates on matters contrary and supplemen-

tal to State enactments. In the case of *Bethlehem Steel Company et al.* v. *New York Labor Relations Board et al.,* 330 U. S. 767, 67 S. Ct. 1026, 1029, 91 L. Ed. 1234, 1245, Mr. Justice JACKSON, in the course of his opinion, said:

''It long has been the rule that exclusion of state action may be implied from the nature of the legislation and the subject matter although express declaration of such result is wanting. . . .

''In the National Labor Relations Act [29 U. S. C. A. sec. 151 et seq.], Congress has sought to reach some aspects of the employer-employee relation out of which such interferences arise. It has dealt with the subject or relationship but partially, and has left outside of the scope of its delegation other closely related matters. Where it leaves the employer-employee relation free of regulation in some aspects, it implies that in such matters federal policy is indifferent, and since it is indifferent to what the individual of his own volition may do we can only assume it to be equally indifferent to what he may do under the compulsion of the state.''

The case of *American Federation of Labor* v. *Watson, supra,* decided by the United States District Court for the Southern District of Florida, is in point. The constitutional provision under attack in that case provides that the right of persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union or labor organization; provided that such provision shall not be construed to deny or abridge the right of employees by and through a labor organization or labor union to bargain collectively with their labor employers. The Court was of the opinion that the provisions did not violate the First or Fourteenth Amendment of the Constitution of the United States.

The Court also expressed the belief that the provision was a police regulation, and that it did not appear to be in conflict with the National Labor Relations Act.

Chapter 36 of the Acts of 1947 does not attempt to interfere with employees or their right to self-organization, to form, join, or assist labor organizations, or bargain collectively through representatives of their own choosing, or to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection. The Act, it seems, is designed to protect non-union workers against loss of jobs or employment on account of their failure to join a union. It is an effort to guarantee to every person the right to join or not join a union without being penalized by loss of job or chance of employment.

We are, therefore, of opinion that said Chapter 36 of the Acts of 1947 does not offend any of the provisions of the Federal or State Constitutions.

It results that all the assignments of error are overruled and the decree of the Chancellor is affirmed.

All concur.

### On Petition to Rehear.

Appellants have filed a petition to rehear, charging that the effect of our opinion of February 28, 1948, left the injunction as to picketing in full force.

The petition to rehear is sustained to the extent that the injunction is modified so as to permit peaceful picketing, as held by the decisions of the Supreme Court of the United States.

All concur.