9 N.J. Super. 433 (1950)
74 A.2d 641
THE CITY OF NEWARK, PLAINTIFF,
v.
CHARLTON HOLDING COMPANY, DEFENDANT.
Superior Court of New Jersey, Essex County Court Law Division.
Decided June 28, 1950.
*435 Mr. Charles Handler, Mr. Louis Weiss of counsel, for complainant-appellee.
Mr. Robert Inlander for defendant-appellant.
HARTSHORNE, J.C.C.
These three appeals, consolidated for trial, are, like those involved in City of Newark v. Charles Realty, Cty. Ct., 74 A. 2d 630, test cases to question the constitutionality of the heating ordinance of the City of Newark, one of the various municipal ordinances, the basis of the many penal proceedings recently instituted by the city as a branch of its so-called slum clearance program. The defendant in these three cases was convicted of violating the heating ordinance, and it attacks its conviction on various grounds, set forth below. Its main contention is that such ordinance is unconstitutional as an invalid attempt to exercise the state police power, delegated to the City of Newark. In this court's decision in City of Newark v. Charles Realty, above alluded to, the legal authority of the city and its Board *436 of Health to adopt ordinances to protect the public health and welfare is shown, as well as the fact that, if an ordinance does substantially protect the public health and welfare, and is not so unreasonable and arbitrary in its effect upon the rights of the individual defendant, as to constitute a taking of property without due process of law, it is a valid exercise of the state police power. No words need thus be added on that score.
That it does tend substantially to protect the public health and welfare, to properly heat buildings, where the public either lives or works, in order that the members of the public are not compelled to live and work at low temperatures, and thus become subject to colds, pneumonia, or other similar diseases, is too obvious to require comment. In fact, our courts have already upheld the validity generally of a similar heating ordinance as authorized by the several statutes there cited. Potter v. Weleck, 131 N.J.L. 155 (Sup. Ct. 1944). See also the statutes cited in Newark v. Charles Realty Co., supra. True, the court in the Potter case held such ordinance invalid in part, because of the fact that such part covered buildings "used or occupied," the court there alluding to the fact that under such ordinance "a building used for storage, and not occupied otherwise would require to be heated," this being unreasonable. But, as hereafter appears, the Newark ordinance in question has no such requirement, the Potter decision thus applying directly thereto, that heating ordinances generally are a valid exercise of the police power.
We turn accordingly to the question of whether, despite the fact that heating ordinances are generally valid, this particular ordinance is invalid, because of the claimed unreasonableness and arbitrary character of its particular terms.
So far as pertinent hereto, the ordinance provides "It shall be the duty of every * * * corporation who shall have contracted * * * to heat * * * any building or portion thereof occupied * * * as a business establishment where one or more persons are employed, to heat * * * every occupied room in such building or portion thereof, so *437 that a minimum temperature of sixty-eight (68) degrees Fahrenheit may be maintained therein at all such times * * *. The term `at all such times' * * * shall include the time * * * during the usual working hours maintained and established in a building or portion thereof occupied as a business establishment, each day, whenever the outer temperature shall fall below fifty (50) degrees Fahrenheit * * *."[1]
*438 The stipulated facts in the three cases show that defendant owns the three premises in question, which it rents out as business establishments where persons were employed, all of such premises adjoining each other, and being a part of the same building or connecting buildings, and heated by the same oil heating plant operated by defendant, under contract to heat all such premises. It is further stipulated that on February 20, 1950, at 10:45 A.M., the temperature in certain of said premises had fallen to 44° , the outside temperature then being 14° ; that on February 27, 1950, when the outside temperature was 18° , at about 10 A.M., the inside temperatures in the two premises there alluded to, but adjoining each other, as above, varied in various parts of same from 61° down to 57° . The effect of this lack of heat was that the many employees in each of the premises quit work therein on both days from 8 o'clock in the morning until noontime. It further appears that defendant has no permanent employee to supervise the performance of the oil-burning apparatus, but employs a single general maintenance man to take care of all the premises in question, together with other premises known as 91 Edison Place, Newark, several blocks away. While this employee checks the heating apparatus each day at 7 A.M., if the same is then in good working order, he leaves the premises for the rest of the day. If not in good working order, since he is not an oil-burner mechanic, he notifies the oil-burner service repairman to attend to the apparatus. It is not known, because of such circumstances, when the defendant's oil burning apparatus became defective with the above result, other than that this occurred sometime between 6 P.M., February 19th, and 7 A.M., February 20th, and between 6 P.M., February 26th, and 7 A.M., February 27th. Neither of these conditions were discovered until 7 A.M., February 20th, and 7 A.M., February 27th, with the resultant lack of heat, causing the inability of all the employees in all these plants to work for an entire half day, and this despite the fact that a coal burning furnace existed on the premises for use in such cases.
*439 Defense counsel further admitted that had defendant's general maintenance man made an inspection of the premises but once an hour during the day, or but once early in the morning, several hours before work commenced, any such failure of the oil burning apparatus could have been remedied, in time to obviate any such failure of heat, affecting the many employees in all the premises concerned. Defense counsel further stated that it would have been possible to have obtained prompt notice of any such failure of the heating apparatus almost immediately, and without the use of any such maintenance man or inspector, by the installation of an A.D.T. electrical thermostatic alarm, which would have immediately given an alarm at a central point, whenever the temperature within the premises fell to any danger point.
Defendant's claim that it acted with due care to maintain the heat at 68° , the standard fixed by the ordinance for the working period, thus appears insupportable. But, since both complainant and defendant contend that the ordinance in question is not based on "due care," nor "wilful intent," we proceed to the consideration of defendant's further attack on such ordinance, that because it imposes an obligation regardless of intent, it is so arbitrary and unreasonable as to constitute a taking of property without due process of law.
In the first place, it is well settled that a statute, and likewise an ordinance, may impose an obligation regardless of intent. Halsted v. State, 41 N.J.L. 552 (E. & A. 1879); Vandegrift v. Meihle, 66 N.J.L. 92 (Sup. Ct. 1901); Commonwealth v. Jackson, 345 Pa. 456, 28 A.2d 894 (Sup. Ct. 1942); Department of Health of City of New York v. Sulzberger, 137 N.Y.S. 998 (Sup. Ct. App. Term 1912).
The question thus is whether, since an ordinance may lawfully be so enacted, the terms of this ordinance are so arbitrary in that regard as to invalidate it. In the first place, defense counsel frankly admit that "68° (the standard fixed by the ordinance) is a reasonable standard for public health," i.e., that the municipality had exercised a fair discretion in this regard, and that such exercise did have a substantial effect *440 upon the public health. Here indeed the words become apt that "While such regulation may be considered drastic in its operation, the court is not at liberty to substitute its judgment for that of the municipality." Peoples Rapid Transit v. Atlantic City, 105 N.J.L. 286 (Sup. Ct. 1929); affirmed, Parlor Car De Luxe Coach Co. v. Atlantic City, 106 N.J.L. 587 (E. & A. 1930).
In the next place, it must be borne in mind, as the proof shows, that even when an oil burning apparatus ceases to function in an emergency, or otherwise, it is a matter of hours, before the temperature within the building will fall below the required standard, provided it is properly heated previously. Thus, any unexpected failure of such apparatus should not result in the defendant's being convicted of a violation of the ordinance, provided it has taken reasonable means, by A.D.T. alarm, or otherwise, to check promptly on such apparatus failure. It will further be noted that this 68° standard need only be maintained during working hours, i.e., only during a time when a violation of the ordinance will in fact endanger the health of the employees, and other occupants, of the premises. Finally it will be noted that the penalty to be imposed for such a violation can never be imprisonment; its maximum being a fine of $100 for the first offense, and $200 for a second or subsequent offense, the court being authorized, of course, to suspend sentence under justifiable conditions.
Therefore, even though the ordinance is not dependent upon the proof of defendant's intent, it is clear that defendant by the exercise of due care can always protect itself from conviction of such a violation. And, further, even a violation cannot result in such severe treatment as to make it oppressive for that reason. Similarly, for the reasons, and because of the authorities cited, in City of Newark v. Charles Realty Co., supra, defendant's objections to the ordinance as discriminatory are without substance. Note particularly the words of our courts that "There is no invidious discrimination merely because the evil may in some degree extend to other occupations * * *. The inquiry is whether there is discrimination *441 against anyone within the prescribed limits of the regulation." Amodio v. Board of Commissioners of West New York, 133 N.J.L. 220 (Sup. Ct. 1945); West Coast Hotel Co. v. Parrish, 300 U.S. 379 (Sup. Ct. 1937). Nor, since the ordinance is a proper exercise of the police power, can it constitute an unlawful interference with contract rights. Every contract is deemed to contain the provisions of the police power as an implied condition. Thus a proper ordinance does not violate the contract, it is a part of the contract. Hudson County Water Co. v. McCarter, 209 U.S. 349 (Sup. Ct. 1908), and the cases cited in Newark v. Charles Realty Co., supra.
Defendant's objection to the fixing of an outside temperature of 50° for the applicability of the ordinance, is insubstantial. Obviously, in fairness to defendant, some outside temperature, substantially lower than the prescribed inside temperature, should be fixed. Under such circumstances, "The court is not at liberty to substitute its judgment for that of the municipality," Peoples Rapid Transit v. Atlantic City, supra, particularly when there is an obviously reasonable basis for the selection of 50° . Again, since the ordinance required defendant to heat "every occupied room," the proof given that one such occupied room was improperly heated, sufficed to show a violation. Of course, defendant's attacks on certain provisions of the ordinance, not involved in the case at bar, are purely academic, and will not be considered. Finally, the omission of the word "heat" in the eighth line of Section 1, after the word "furnish," is immaterial, in view of the fact that the entire clause "or to furnish (heat) for" is surplusage.
In short, the heating ordinance of the City of Newark, as applicable to defendant in the three test appeals, would seem valid, as a reasonable exercise of the state police power, delegated to the City of Newark and its Health Department. The convictions of defendant are accordingly affirmed.
NOTES
[1] The complete heating ordinance, Department of Health, City of Newark, is as follows:

"1. It shall be the duty of every person, firm or corporation who shall have contracted or undertaken, or shall be bound, to heat or to furnish heat for any building or portion thereof, occupied as a home or place of residence of one or more persons, or as a business establishment where one or more persons are employed, to heat or to furnish heat for every occupied room in such building or portion thereof, so that a minimum temperature of sixty eight (68) degrees Fahrenheit may be maintained therein at all such times. Provided however, that the provisions of this section shall not apply to buildings or portions thereof, used and occupied for trades, businesses or occupations where high or low temperatures are essential.
"For the purpose of this section, wherever a building is heated by means of a furnace, boiler or apparatus under the control of the owner, agent or lessee of such building, such owner, agent or lessee, in the absence of a contract or agreement to the contrary, shall be deemed to have contracted, undertaken, or bound himself or herself to furnish heat in accordance with the provisions of this section.
"The term `at all such times' as used in this section unless otherwise provided by a contract or agreement, shall include the time between the hours of six-o'clock in the morning and ten o'clock in the evening in a building or portion thereof, occupied as a home or place of residence, and during the usual working hours maintained and established in a building or portion thereof, occupied as a business establishment, each day whenever the outer temperature shall fall below fifty (50) degrees Fahrenheit.
"The term `Contract' as used in this section shall be taken to mean and include a written, verbal, or implied contract, lease or letting, and the presence of heating outlets, radiators, risers or returns in any hall or apartment, or subdivision of a house, shall be prima facie evidence of an implied contract.
"2. Any person, firm or corporation convicted of a violation of this ordinance, shall, on the first conviction thereof, forfeit and pay a penalty of One Hundred Dollars, and on any second or subsequent conviction, shall forfeit and pay a penalty of Two Hundred Dollars.
"3. This ordinance shall take effect immediately."