73 N.J. Super. 352 (1962)
179 A.2d 789
BOROUGH OF BRIELLE, PLAINTIFF-RESPONDENT,
v.
ROBERT F. ZEIGLER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Monmouth County Court, Law Division.
Decided March 31, 1962.
*354 Messrs. Parsons, Canzona, Blair & Warren, attorneys for defendant-appellant (Mr. Theodore J. Labrecque, Jr., appearing).
Messrs. Durand, Ivins & Carton, attorneys for plaintiff-respondent (Mr. Robert V. Carton, appearing; Mr. Frederick J. Moench, of counsel).
ASCHER, J.C.C.
This is an appeal from the municipal court, which found defendant Robert F. Zeigler guilty of violating Ordinance No. 254 of the Borough of Brielle, entitled "An Ordinance to License and Regulate Mercantile and Other Business and Occupations, etc." The plaintiff Borough of Brielle (hereinafter referred to as Brielle) approved and adopted the ordinance on August 8, 1960, since amended by Ordinance No. 263, adopted April 10, 1961, and Ordinance No. 268, adopted July 24, 1961. Charles H. Byrne, the appointed licensing officer, swore out the complaint and issued summons on September 5, 1961, alleging that Robert F. Zeigler did on August 30, 1961 violate Ordinance No. 254. Defendant Robert F. Zeigler (hereinafter referred to as Zeigler) docked on the northerly shore of the Manasquan River, bordering the southerly side of Brielle. Zeigler was engaged in the "boat for hire" business, which consisted of transporting passengers and other chattels and merchandise for a fee.
*355 Zeigler did not comply with Ordinance No. 254, by failing to make formal application to the borough clerk for a license and paying the fee to engage in the aforesaid business.

I. CONSTITUTIONAL LIMITATIONS.
Many municipalities have passed ordinances similar to Ordinance No. 254. Brielle adopted an ordinance whose form and pattern resemble that usually passed by local legislative bodies. The scope is broad, and strict with detailed regulatory and procedural features, the scheme being one of regulation by municipal registration and license, issuable only on compliance with numerous conditions. Moyant v. Borough of Paramus, 30 N.J. 528, 534 (1959). Zeigler was pursuing a lawful business in an attempt to earn a livelihood, but Brielle exercised its general police power in attempting to protect the public from the evils and bad features connected with the business.
The New Jersey Constitution, Art. IV, Sec. VII, par. 11 provides:
"The provisions of this Constitution and of any law concerning municipal corporations formed for local government, or concerning counties, shall be liberally construed in their favor. * * *"
This constitutional provision is fully applicable to this case, having been applied by our courts in numerous similar fact situations. The court in Mullin v. Ringle, 27 N.J. 250, 256 (1958), commented:
"Having in mind the strong presumption in favor of validity of the action (appointment of park patrolmen and park police chief) our duty under the 1947 Constitution, Art. IV, Sec. VII, par. 11, and the legislative direction, N.J.S.A. 40:42-4 to construe liberally grants of power to municipal governments, we cannot sustain the plaintiff's charge of illegality."
For the most recent cases, see Yardville Estates, Inc. v. City of Trenton, 66 N.J. Super. 51, 59 (App. Div. 1961), *356 and Greggio v. City of Orange, 69 N.J. Super. 453, 460 (Law Div. 1961).
Brielle has within its jurisdictional limits large bodies of water which may present a problem of pollution or other public health problems. Under N.J.S.A. 40:48-2:
"Any municipality may make * * * such other ordinances * * * as it may deem necessary and proper * * * for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law."
The most recent case commenting on this area of the law is Dover Township, in the County of Ocean, v. Kassenoff, 37 N.J. Super. 582 (App. Div. 1955), wherein Judge (now Justice) Francis at page 587 stated:
"Our courts have recognized that control over garbage and refuse matter is `indispensable to public health, safety and comfort' (Earruso v. Board of Health, East Hanover Township, 120 N.J.L. 463, 469 (Sup. Ct. 1938), and that `ample power to deal with the problem has been granted to Municipal Boards of Health and Governing Bodies.' Township of Dover v. Witt, 7 N.J. Super. 259 (App. Div. 1950), citing inter alia, R.S. 40:66-1; Marangi Bros, Inc. v. Board of Com'rs of Village of Ridgewood, 33 N.J. Super. 294 (App. Div. 1954)."
Zeigler contends that the ordinance is void, since it attempts to license and regulate motor "vehicles" operating on navigable waters under the authority given to municipalities in N.J.S.A. 40:52-1. The Legislature in N.J.S.A. 40:52-1 provided:
"The governing body may make, amend, repeal and enforce ordinances to license and regulate: a. all vehicles used for the transportation of passengers * * *."
(Note that "vehicles" is used along with the term "transportation.") According to Webster's New Collegiate Dictionary (1960 ed.), p. 904, "transportation" is defined as "systems and modes of conveyance of persons or goods *357 from place to place." At page 943 "vehicle" is defined as "that in or on which a person or thing is or may be carried."
The Zeigler boat was carrying persons from place to place. It was taking on passengers from its dock in the Brielle Yacht Basin and carrying them to the fishing grounds; therefore, the Zeigler boat is included in the dictionary definition of "vehicle." Because the wheel was the first means of transportation, people immediately think of a "vehicle" as a means of transportation with wheels. Scientific advances have made it possible to transport persons without the aid of this stone-age invention  even space ships are "vehicles."
Brielle, pursuant to N.J.S.A. 40:52-1, enacted Ordinance No. 254 with the word "vehicle" found in sections 101 and 301(c). By its title Ordinance No. 254 is "An Ordinance to License and Regulate Mercantile and Other Business and Occupations, etc." Section 101 defines the term "business" to
"* * * include all kinds of vocations, occupations, enterprises, establishments, and all other kinds of activities and matters, together with all devices, machines, vehicles and appurtenances used therein, any of which are conducted for private profit, or benefit, either directly or indirectly, on any premises in the Borough of Brielle, as set forth in Section 40:52-1 of the Revised Statutes of the State of New Jersey and the Acts amendatory thereof and supplemental thereto."
The Zeigler boat was within the jurisdiction of Brielle by being docked in the Yacht Basin and by the placing of signs outside the entrance to the Yacht Basin and advertising the "head boat." The fact that these boats were operating in interstate commerce does not affect the applicability of the ordinance. In Ross v. Mayor, etc. of Borough of Edgewater, 115 N.J.L. 477 (Sup. Ct. 1935), affirmed 116 N.J.L. 447 (E. & A. 1936), cert. denied 299 U.S. 543, 57 S.Ct. 37, 81 L.Ed. 400 (1937), the Borough of Edgewater adopted an ordinance entitled "An ordinance to regulate and to license the mooring, storage and maintenance of scows, barges and other vessels in the borough of Edgewater." *358 The borough is situated on the west bank of the Hudson River, at this point a navigable water of the United States. The court felt that the requirement of a license and the payment of the designated fee did not constitute the levying of a tax upon interstate or foreign commerce or the privilege of engaging in interstate commerce. The license and payment merely affect commerce and was not the regulation or the placing of a burden thereon. In Ross, supra, 115 N.J.L., at pages 489 and 490, the court quotes with approval from Gibbons v. Ogden, 9 Wheat. 1, 186, 6 L.Ed. 23 (1824), and Ames v. Kirby, 71 N.J.L. 442, 445 (Sup. Ct. 1904), in that:
"* * * `The same bale of goods, the same cask of provisions, or the same ship that may be the subject of commercial regulation, may also be the vehicle of disease. And the health laws that require them to be stopped and ventilated, are no more intended as regulations on commerce, than the laws which permit their importation, are intended to inoculate the community with disease. Their different purposes mark the distinction between the powers brought into action; and while frankly exercised they can produce no serious collision.' * * * `But even the interstate commerce is subject to be occasionally prevented or interfered with by the incidental operation of state laws and regulations established under the reserved police powers of the state; and if these be reasonable in character, not intended as a regulation of commerce, but intended to promote the health, peace, good order, and welfare of the citizens, such laws and regulations are not invalid in the absence of exclusive legislation by Congress upon the subject, although their enforcement may measurably hamper commercial intercourse between the states.'"
In this area of local and state interference with interstate commerce, a host of decisions has been rendered with statements similar to the one in the landmark decision of Cooley v. Board of Wardens, etc. of Philadelphia, 12 Howard 299, 301, 13 L.Ed. 996 (1851), where at page 320 the court held:
"It is the opinion of a majority of the Court that the mere grant to Congress of the power to regulate commerce, did not deprive the States of power to regulate pilots, and although Congress has legislated on this subject, its legislation manifests an intention, with a single exception, not to regulate this subject but to leave its regulation to the several states."
*359 In a most recent decision, Huron Portland Cement Co. v. City of Detroit, Mich., 362 U.S. 440, 442-444, 80 S.Ct. 813, 815-816, 4 L.Ed.2d 852, 855-856 (1960), dealing with the problem of whether a city smoke abatement ordinance could be enforced against interstate steam vessels, Mr. Justice Stewart delivered the following for the Supreme Court:
"The ordinance was enacted for the manifest purpose of promoting the health and welfare of the city's inhabitants. Legislation designed to free from pollution the very air that people breathe clearly falls within the exercise of even the most traditional concept of what is compendiously known as the police power. In the exercise of that power, the states and their instrumentalities may act, in many areas of interstate commerce and maritime activities, concurrently with the federal government. [Citations omitted]
The basic limitations upon local legislative power in this area are clear enough. The controlling principles have been reiterated over the years in a host of this Court's decisions. Evenhanded local regulation to effectuate a legitimate local public interest is valid unless pre-empted by federal action, [citations omitted] or unduly burdensome on maritime activities or interstate commerce. [Citations omitted]
In determining whether state regulation has been pre-empted by federal action, `the intent to supersede the exercise by the state of its police power as to matters not covered by the Federal legislation is not to be inferred from the mere fact that Congress has seen fit to circumscribe its regulation and to occupy a limited field. In other words, such intent is not to be implied unless the act of Congress, fairly interpreted, is in actual conflict with the law of the state.' [Citations omitted]
In determining whether the state has imposed an undue burden on interstate commerce, it must be borne in mind that the Constitution when `conferring upon Congress the regulation of commerce, * * * never intended to cut the States off from legislation on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country. Legislation, in a great variety of ways, may affect commerce and persons engaged in it without constituting a regulation of it, within the meaning of the Constitution.' [Citations omitted] But a state may not impose a burden which materially affects interstate commerce in an area where uniformity of regulation is necessary. [Citations omitted]
Although verbal generalizations do not of their own motion decide concrete cases, it is nevertheless within the framework of these basic principles that the issues in the present case must be determind."

*360 II. SUFFICIENT STANDARD.
Whenever a municipality passes an ordinance and delegates authority to an agent to use his discretion in the granting or denying of an application for a license, there is a requirement that a sufficient and satisfactory standard be provided to guide the agent in the exercising of his discretion. The Brielle ordinance contained article IV, sections 401 through 407, which outline the procedure to be followed in the filing of the application and the granting of the license. Section 404 provides:
"No license, or renewal thereof, shall be issued to a person not of good moral character. If applicant is not an individual these provisions shall apply to its officers and managers."
Following this, in section 405, is:
"Upon written request of the Borough License Officer or the Borough Clerk, the Chief of Police shall ascertain if the applicant has any criminal record and report in writing affirmatively or negatively thereon within seven (7) days after said request is made, indicating in his report, his approval or disapproval of the granting of a license and giving his reason therefor."
Finally, section 406 provides that the borough licensing officer must make an investigation necessary and shall indicate his findings with reasons supplied if he disapproves the license's being granted.
These three sections seem to be satisfactory and adequate according to the statements by the court in Moyant v. Borough of Paramus, supra, 30 N.J., at pages 553, 554 (1959). An ordinance regulating and licensing solicitors and canvassers in Paramus was challenged on the grounds of not having a sufficient standard. The ordinance provided that the licensing officer should make an investigation of the applicant's "business and moral character * * * as he deems necessary for the protection of the public good" before approving the license application. The *361 application included fingerprints, a statement setting forth any conviction for any crime or offense, and two references as to character and business responsibility, or evidence from which the same could be evaluated. Justice Hall, delivering the opinion for the court, said:
"The whole ordinance may be looked to in the light of its surroundings and objectives for the purpose of deciding whether there are standards and if they are sufficient. In re Berardi, 23 N.J. 485, 491 (1957). They need not be minutely detailed. Ward v. Scott, 11 N.J. 117 (1952). As Justice Jacobs there pointed out, `the exigencies of modern government have increasingly dictated the use of general rather than minutely detailed standards in regulatory enactments under the police power' (11 N.J., at page 123), * * *. A standard will not be deemed inadequate simply because the discretion might be abused. Arbitrary action by the official will not be anticipated.

* * * * * * * *
We believe the norm of `satisfactory' as to an applicant's `character and business responsibility' is minimally sufficient."
The Brielle ordinance lists the objective facts which are to be disclosed by the application and the investigation. These facts must disclose to the satisfaction of the licensing officer that the applicant is of good moral character. The ordinance plainly does not leave the officer so uncontrolled as to be able to exercise his discretion by a mere whim.

III. REASONABLE FEES.
Upon the granting of the license, a fee has to be paid to the borough. When a fee is large it must be carefully examined to make sure that it is not a "revenue-raising device" or an unreasonable burden on interstate commerce. In Salomon v. Jersey City, 12 N.J. 379, 390 (1952), the court said:
"* * * we consider that the primary and overriding purpose of the Legislature in enacting R.S. 40:52-1 and R.S. 40:52-2 was to authorize municipalities to license and regulate, as police measures for the public health, safety, morals or welfare, the local businesses described therein, and only incidentally to impose on the businesses *362 thus licensed and regulated license fees for revenue which may, at least within reasonable limits, exceed the regulatory costs."
In Weiner v. Borough of Stratford, 15 N.J. 295 (1954), the court iterated the above quotation and applied it to an ordinance requiring a license as a prerequisite to the operation of a business, calling for payment of fees ranging from $5 to $100. The court held:
"The annual license fees range from $5 to $100 (all but eight businesses pay a $5 fee; an auction store pays the $100 fee), and the paucity of regulatory provisions is strongly suggestive that these fees are unreasonably in excess of the regulatory costs and are in actuality imposed solely to raise revenue." (15 N.J., at page 298)
Recently, in Moyant, supra, 30 N.J., at page 546, there was a warning by the Supreme Court of unduly burdening interstate commerce by unreasonable local regulations and fees. They felt that "a fee designed to defray costs could be charged for license, though it could not exceed bounds of reason considered in connection with cost of service granted."
The schedule of fees in the Brielle ordinance ranges from $1 to $50, with the exception of one $100 fee charged to food stores and markets of 5001 square feet or more of sales area. Such businesses as meats and poultry (retail), ice cream stands and hot-dog stands only pay a fee of $25, and a manufacturing (machine or assembling) plant only pays a fee of $50; but boats for hire (party or charter) pay a fee of 75¢ per lineal foot. The defendant-appellant in this case was fined $50 under this schedule of fees. All of the above mentioned businesses are permanently located on land and are in contact with many persons per day. The Zeigler boat is in and out of the Brielle Yacht Basin, carrying at a maximum capacity 60 persons per day. It would appear that the fee charged against boats for hire (party or charter), in comparison with other businesses located within the Borough of Brielle's limits, is unreasonable and places a burden on these "vehicles" of interstate commerce, and is not within the reasonable limits of the cost of regulation.
*363 It is the finding of this court that the Borough of Brielle is within its constitutional limits in its regulation of interstate commerce by Ordinance No. 254, and that there was a sufficient standard controlling the exercise of the licensing officer's discretion; but section 507, subsection "Boats, Party or Charter for Hire," 75¢ per lineal foot of the boat's registered length is arbitrary and unreasonable.
Therefore, in accordance with section 701 of Ordinance No. 254, section 507, subsection "Boats, Party or Charter for Hire," is declared invalid; the remainder of the ordinance is deemed valid and effective and not affected by this adjudication. Prinz v. Borough of Paramus, 120 N.J.L. 72, (Sup. Ct. 1938), affirmed 121 N.J.L. 585 (E. & A. 1938).
This matter being heard de novo under the rules, the court grants judgment in favor of defendant Zeigler of not guilty. The judgment of the court below is hereby set aside and for nothing holden.
A judgment conformable to these findings may be presented.