77 N.J. Super. 354 (1962)
186 A.2d 513
MISTER SOFTEE, A CORPORATION OF NEW JERSEY, JERSEY CITY CURB SERVICE, INC., A CORPORATION OF NEW JERSEY; AND PAUL A. CARDINALE AND JOSEPH E. MURPHY, JR., AS PARTNERS TRADING AS "MISTER SOFTEE," PLAINTIFFS,
v.
MAYOR & COUNCIL OF THE CITY OF HOBOKEN, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANT. GOOD HUMOR CORPORATION, A CORPORATION, PLAINTIFF,
v.
MAYOR & COUNCIL OF THE CITY OF HOBOKEN, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided November 14, 1962.
*359 Mr. Herbert New argued the cause for the plaintiff Mister Softee (Messrs. Brenner & New, attorneys).
Mr. Saul J. Zucker argued the cause for the plaintiff Good Humor (Messrs. Kristeller, Zucker, Lowenstein & Cohen, attorneys); Mr. Donald R. Creighton, of counsel (Messrs. Dickson & Creighton, attorneys).
Mr. E. Norman Wilson argued the cause for the defendant Mayor & Council of the City of Hoboken (Mr. Robert F. McAlevy, Jr., attorney).
*360 ARTASERSE, A.J.S.C.
These are consolidated actions in lieu of prerogative writs attacking the validity of an ordinance adopted by the City of Hoboken on May 2, 1962, known as sections 21:21 to 21:32 inclusive of chapter 21 of "The General Ordinances of the City of Hoboken" adopted January 7, 1959 entitled "An Ordinance to Regulate and License Vendors, Peddlers, Itinerant or Transient Merchants, and to Be Known as Sections 21:21 to 21:32 Inclusive of Chapter 21 of `The General Ordinances of the City of Hoboken.'"
The disputed sections of the ordinance are:
21:26. Granting of Licenses: Following the filing of the application, a copy thereof shall be sent by the License Inspector to the Director of the Department of Public Safety of the City of Hoboken who shall verify the moral character of the applicant by causing his fingerprints to be taken and a photograph made, and based on his findings, shall either recommend his approval or disapproval of the application. Upon the approval of the application and payment of the fee the license shall be issued by the License Inspector who shall keep all necessary records pertaining thereto. For all license classes, the license shall not authorize any person except the person named in said license, to engage in business thereunder. Said license shall not be transferable from the person to whom issued to any other person. A separate license must be obtained by a licensed peddler for every agent or employee working for him. All licenses shall expire on the 31st day of December of each year.
21:29. Regulations to be observed: All persons to whom a license shall be issued hereunder shall observe the following regulations [sic, regulations]:
(1) No person or vehicle shall stand or be parked for the purpose of displaying or selling wares, merchandise or service on public or private property within 200 feet of a business selling same or similar merchandise.
(2) No person or vehicle shall stand or be parked in a fixed location for the purpose of displaying or selling wares, merchandise or services on any public or private property where to do so causes or is likely to cause a crowd, impede vehicular or pedestrian traffic, produce annoying sounds, noise or disturbances, which interfere with the comfort of the residents, nor shall use a gong bell or other instrument or sound device to attract the attention of the public. It shall also be unlawful to strew or litter or cause to be strewn or littered the public streets or sidewalks with refuse or waste matter of any kind or to in anywise interfere with the comfort or convenience of the residence or business of the occupants or owners of adjacent properties.
*361 (3) No person or vehicle shall stand or be parked for the purpose of displaying or selling wares, merchandise or services on any public or private property within a distance of 200 feet of the nearest public, parochial or private school in the City of Hoboken during school hours. School hours shall mean any time between 8:30 A.M. and 3:30 P.M. on weekdays, exclusive of Saturdays, during such days as the said schools may be in session.
(4) No person covered by this ordinance shall sell or attempt to sell in accordance with the terms of this ordinance except as set forth in the preceding paragraph, before 9 A.M. or after 9 P.M. prevailing time. The aforesaid time limitations shall not apply to persons who are expressly invited into homes by the occupants thereof.
(6) No licensee shall park his vehicle or dispensing container for a period longer than the time it takes to make a sale to a customer.
Plaintiffs challenge the validity of said ordinance for the following reasons:
(a) The said provisions transcend the power granted to the City of Hoboken by R.S. 40:48-2 or N.J.S.A. 40:52-1, in that the purpose or objects of the municipality in adopting said provisions are unlawful and ultra vires for the reason that they do not advance the common good and can accomplish nothing other than to shield local shopkeepers from competition;
(b) Said provisions represent an unreasonable exercise of the police power for the reasons that the means employed by the City of Hoboken to attain any possible or lawful municipal objects are unreasonable, nor is there any substantial relationship between such means employed and any avowed lawful object;
(c) The said ordinance, while purporting to be regulatory, is really prohibiting plaintiffs from continuing to do business as itinerant ice cream vendors in the City of Hoboken;
(d) The aforesaid provisions are arbitrary and discriminatory in that they favor one particular class of merchants over another for the enrichment of the former class, restrict competition and create monopolies or confer exclusive privileges;
(e) The provisions of section 21:26 of the ordinance quoted above are invalid, ultra vires and unconstitutional for the reason that it delegates to the Director of the Department *362 of Public Safety of the City of Hoboken discretionary power to grant or deny a license without setting forth adequate or sufficient standards to guide his determination; and
(f) The said provisions violate the due process and equal protection clauses of the Federal Constitution (14th Amendment) and of the New Jersey Constitution, Art. I, pars. 1 and 5.
The defendant Mayor and Council of the City of Hoboken states that the ordinance and its provisions are a lawful exercise of the power granted to said municipality under the provisions of R.S. 40:48-2 and N.J.S.A. 40:52-1; are not violative of the provisions of the Federal or New Jersey Constitutions; are a reasonable exercise of the police power of the municipality, and are designed for the preservation of the health, safety and welfare of the residents of Hoboken. The defendant also contends that the bells used by the plaintiffs, the hawking by peddlers, the use of mechanical musical devices by peddlers, and the assembling or parking for the dispensing of their wares and merchandise create a congested situation in allowing numerous people to assemble in the evening and during the day, which disturbs the peace and quiet of the community and affects the sleep of the residents and the children. The defendant further says that the use of the vehicles employed by the plaintiffs creates a dangerous traffic hazard in that the ringing of the bells, gong or whatever instrument of sound used causes the children to dart out from the sidewalk into the path of oncoming traffic, thereby endangering their lives and safety. This condition is more hazardous in a community such as Hoboken where there is a high density of population, narrow streets and the parking of vehicles on both sides of the street. Moreover, these hazards are more pronounced when said peddlers dispense their merchandise in the vicinity of schools. Defendant further asserts that the regulation concerning the distance of 200 feet from an established business is a reasonable one, because past experience has shown that when a peddler has parked his vehicle near a store selling the same merchandise, arguments and *363 breaches of the peace have ensued between the storekeeper and the peddler, which fracases not only affected the persons involved but the children and others who were at or near said vehicles and stores.
The parties have stipulated the following:
(1) Plaintiffs have been engaged in the business of vending ice cream and ice cream products from mobile vehicles in the State of New Jersey for many years, and for many years have operated in the City of Hoboken and that the vending period of their businesses commences on or about April 1 and lasts to October 1 of each year.
(2) Plaintiffs are presently operating in Hoboken under licenses issued pursuant to the peddling ordinance in effect immediately preceding the ordinance now being challenged.
(3) Plaintiffs have substantial investments in equipment and employ numerous employees in their businesses.
(4) Attention of the buying public is attracted by the bells of Good Humor and by the musical chimes of Mister Softee.
(5) Hoboken is approximately one mile square and there are 18 blocks running north and south and 15 blocks running east and west.
In addition to the stipulations, the court makes the following findings of fact:
The plaintiff Good Humor Corporation has one truck which has operated in Hoboken for the past 14 years from April 1 to October 1 of each year. It leaves the company garage in Newark at 11 A.M. and remains actively engaged in selling the products of Good Humor until about 10 P.M. Upon entering a block the salesman stops his truck 20 to 50 feet in from the intersection and rings the tinkle bells of the Good Humor vehicle. He then waits for customers. This procedure is repeated in the middle and end of each 200-foot block. The bells, which are operated manually, consist of a set of four bells which range from two inches to three and a quarter inches in diameter. No gong is used. These bells can be heard for a distance of more than 100 feet and are used to attract customers.
The plaintiffs Paul A. Cardinale and Joseph E. Murphy, Jr., partners trading as Mister Softee, operate two vehicles in the City of Hoboken selling ice cream products. The *364 plaintiff Mister Softee, a corporation of New Jersey, sells its vehicles and gives franchises to the purchasers thereof to sell its products. The plaintiff Jersey City Curb Service, Inc., supplies the products and services the vehicles for the plaintiffs Cardinale and Murphy. Mister Softee operates from March 15 to October 15 of each year between the hours of 11 A.M. and 10:30 P.M. and has conducted its business in Hoboken only for the years 1961 and 1962. Upon entering a block the driver makes three stops therein, none of which is at an intersection, and the musical chimes are rung to attract customers. These vehicles have mechanically operated musical chimes which are played by the pushing of a switch. The cycle is 45 seconds, and to replay the chimes the switch must be moved. School principals have asked the operators of the Mister Softee vehicles to remove them from at or near school entrances, and no sales are made or attempted within 200 feet of the schools. In the City of Hoboken there are 15 schools  5 parochial elementary schools, 6 public elementary schools, 2 private high schools, 1 public high school and the Stevens Institute of Technology.
Both the tinkle bells and the musical chimes may be played continuously and without interruption.
Sales made by both Mister Softee and Good Humor before 6 P.M. average about 35% to 40%, and those made after 6 P.M. average between 60% and 65% of the total daily sales.
The blocks running east and west in Hoboken average 200 feet in length, and those running north and south average 425 feet in length. With the exception of Washington Street, the streets are narrow, and except near a school, parking is permitted on both sides of the street.
There are 145 stores or other places of business in the City of Hoboken that sell ice cream products or products similar to those sold by both of the plaintiffs. The only section where ice cream and ice cream products are not sold in Hoboken is bounded on the south by 10th Street, on the north by the city line, on the east by Clinton Street and on the west by the city line. Hudson Street is the only other street in Hoboken *365 where the plaintiffs could sell their products and not be in violation of the ordinance in question.
The City of Hoboken is similar to most industrial cities in that there is much noise therein. The noise level is about 80 decibels, and even with the tinkling of the bells of Good Humor or the sounding of the musical chimes of Mister Softee the decibels are not appreciably increased, if at all. In certain areas in the City of Hoboken, on the river front and near its factories and in areas where large trucks traverse, the decibels are as high as 90 without the tinkling of the Good Humor bells or the sounding of the Mister Softee musical chimes.
Plaintiffs contend that the ordinance is invalid in that it arbitrarily discriminates between them and other merchants situated in Hoboken. Classifications between members of a broad class are valid when a rational basis exists for the classification set up by ordinance. As long as a rational basis exists for a classification among merchants, supported by pertinent facts, the classification is valid and nondiscriminatory. Gilman v. Newark, 73 N.J. Super. 562, 575 (Law Div. 1962). The extent of the evil determines the means that can be used to suppress it. Two Guys from Harrison, Inc. v. Furman, 32 N.J. 199 (1960).
Regulation of a business is not objectionable because similar restrictions are not placed on other businesses. The discrimination that gives rise to relief exists only where persons engaged in the same business are subjected to different restrictions, or are extended different privileges under the same conditions. Soon Hing v. Crowley, 113 U.S. 703, 5 S.Ct. 730, 28 L.Ed. 1145 (1885). That itinerant hawkers and peddlers are a class apart from merchants who have fixed places of business is too clear to require extended exposition. Such people roam the streets of a city, and the situation presented is fraught with the opportunity to commit fraud or other crimes. Also, many such vendors now use vehicles in their business, giving rise to traffic congestion and other hazards arising from the use of cars and trucks. There being *366 a rational basis for the regulation of itinerant merchants, the classification in the ordinance is valid.
The plaintiffs are most critical of the following provision of the ordinance:
Section 21:29, paragraph (1):
"No person or vehicle shall stand or be parked for the purpose of displaying or selling wares, merchandise or service on public or private property within 200 feet of a business selling same or similar merchandise."
Under the police power a municipality has wide discretion as to the means it may employ to suppress an evil. Municipal enactments are presumed valid and should be sustained when they bear a reasonable relationship to the end to be accomplished, namely, the safeguarding of the public health, safety and morals, and when the method adopted to meet the problem is reasonably designed to accomplish that end. As Judge (now Justice) Francis said in Marangi Bros. v. Bd. of Commissioners of Ridgewood, 33 N.J. Super. 294 (App. Div. 1954):
"* * * And even more specifically here, in applying the various sections of the Home Rule Act, we must be mindful that the legislature has directed a most liberal construction policy. For R.S. 40:42-4, N.J.S.A. says:
`In construing the provisions of this subtitle, all courts shall construe the same most favorably to municipalities, it being the intention to give all municipalities to which this subtitle applies the fullest and most complete powers possible over the internal affairs of such municipalities for local self-government.'
Nor can we lose sight of the mandate in the 1947 Constitution, Art. IV, § VII, par. 11, for liberal construction of legislation concerning municipal powers." (at p. 301)
An ordinance must bear a substantial relation to the public health, safety or welfare. Local Bd. of Health of Berkeley Tp. v. Johnson, 73 N.J. Super. 384 (App. Div. 1962). Also, there must be a substantial connection between the means invoked and the public interest to be advanced. Schmidt v. Board of Adjustment, Newark, 9 N.J. 405 *367 (1952); Lakewood Express Service v. Board of Public Utilities Commissioners, 1 N.J. 45 (1948). The police power must be used on behalf of the interests of the public and not to further the interests of a particular class. New Jersey Used Car Trade Association v. Magee, 1 N.J. Super. 371 (Ch. Div. 1948). In the paragraph here under consideration there is no reasonable relation between the end desired, the protection of the public health, safety or morals, and the provisions of this regulation. The only possible rationale which the city has advanced for the purpose of this ordinance is that at times itinerant merchants and nearby local merchants have had altercations. While preventing disturbances of the peace is within the police power, the method adopted here, forbidding vendors from selling within 200 feet of others selling the same merchandise, is an unreasonable way of reaching this result. The means used must be reasonably necessary for the accomplishment of the purpose and not unduly oppressive of individuals. New Jersey Used Car Trade Association v. Magee, supra. This regulation is unreasonable and unduly oppressive of itinerant vendors. It is a regulation patently for the benefit of local shopkeepers to prevent competition and it will not be permitted under the mask of a police regulation. Germano v. Keenan, 25 N.J. Super. 37 (Ch. Div. 1953). This is a subversion of competition that was condemned in N.J. Good Humor, Inc. v. Bradley Beach, 124 N.J.L. 162 (E. & A. 1940), where a municipal ordinance prohibiting all vending was struck down as beyond the scope of the police power. Unreasonable use of the police power was struck down in Moyant v. Paramus, 30 N.J. 528 (1959), where the court said:
"* * * The power cannot, however, be exercised for `a purpose to shield the local shopkeepers from lawful competition, and thus to serve private interests in contravention of common rights; * * *' [citing cases]." (at p. 545)
The regulation here is not to serve a public end and is thus invalid.
*368 The next attack is upon that part of paragraph 2 of section 21:29 which says:
"* * * produce annoying sounds, noise or disturbances, which interfere with the comfort of the residents, nor shall use a gong bell or other instrument or sound device to attract the attention of the public. * * *"
In view of the wording of the ordinance, a question arises as to whether all mechanical means that produce sounds are banned, or whether only those that are loud and raucous and similar to a "gong bell" are prohibited. The doctrine of ejusdem generis is applicable in the construction of this paragraph. In Ford Motor Company v. N.J. Dept. of Labor and Industry, 5 N.J. 494 (1950), Justice Heher explained the operation of this doctrine:
"* * * Ordinarily, the coupling of words denotes an intention that they shall be understood in the same general sense. The natural, ordinary and general meaning of terms and expressions may be limited, qualified and specialized by those in immediate association. Words of general and specific import take color from each other when associated together, and thus the word of general significance is modified by its associates of restricted sense. The general word is qualified by the particular word. * * *" (at p. 502)
In the paragraph under consideration the words "other instrument or sound device" are modified by the express use of the particular words "gong bell." Therefore only loud, raucous and disturbing noises similar to those produced by a "gong bell" made by mechanical devices are prohibited. That this was the intent of the municipality is further evidenced by paragraph 7 of section 21:29 which expressly says that:
"* * * The ringing of any bell or similar sound, or the making of any noise to attract attention shall be construed to be an attempt to sell, and any such conduct by the licensee before or after the prescribed hours of sale shall constitute a violation of these regulations."
*369 This makes the use of a bell before or after the prescribed hours of sale a violation of the prohibitions against sales during certain hours, but it does not make the ringing a violation of paragraph 2 which prohibits the use of a "gong bell or other instrument or sound device."
Loud noises, such as that made by a "gong bell" disturb the peace and tranquillity of a community. It is in the public welfare and convenience that some semblance of quiet prevail in a city. Relative quiet is conducive to the public rest and leads to more efficiency in work and school. Relative quiet also makes a community more attractive and thus people will be induced thereby to come into and remain in the city. Thus the prohibition against the use of a "gong bell or other instrument or sound device" is a valid use of the police power both in the object to be attained and the means used. See Tagmire v. Atlantic City, 35 N.J. Super. 11 (App. Div. 1955), where the court said that the prohibition of the use of a gong, bell or other sound device was clearly a proper exercise of the municipal power. Moreover, the language itself of the section under consideration reveals what was intended to be banned, to wit, "annoying sounds, noise or disturbances, which interfere with the comfort of the residents * * *."
It is well within constitutional limitations to prohibit loud and raucous noises. An ordinance of the City of Trenton which prohibited sound trucks that emitted loud and raucous noises was upheld in Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949); same case 135 (N.J.L. 64 (Sup. Ct. 1946), affirmed 135 N.J.L. 584 (E. & A. 1947). However, Justice Reed speaking for the United States Supreme Court said the following:
"* * * Absolute prohibition within municipal limits of all sound amplification, even though reasonably regulated in place, time and volume, is undesirable and probably unconstitutional as an unreasonable interference with normal activities." (336 U.S., at pp. 81-82, 69 S.Ct., at p. 451.)
*370 The City of Southgate, Michigan adopted an ordinance "prohibiting a vendor from using any noise making device to attract attention to his wares." In City of Southgate v. Greenberg (Cir. Ct. Wayne Cty. 1962), the court said:
"* * * taking the subject ordinance in its most favorable light as it relates to the well settled propositions of law referred to, the ordinance which absolutely prohibits the use of noise making devices admittedly materially reducing sales of an otherwise legitimate business is an unreasonable exercise of police powers of the City of Southgate." (Emphasis added.)
Thus, the characteristic "tinkle" of plaintiff Good Humor and the melodious chimes of plaintiff Mister Softee are not banned under this ordinance, since under the doctrine of ejusdem generis they are not in the same category as a "gong bell," Atlantic City Transp. Co. v. Walsh, 6 N.J. Super. 262 (App. Div. 1950), nor are they annoying sounds, noises, or disturbances which interfere with the comfort of the residents.
It should be noted that if the plaintiffs' sound devices become annoying, the defendant municipality and its residents are not without relief under the law and Hoboken's ordinances prohibiting nuisances.
The plaintiffs also challenge the validity of paragraph 3 of section 21:29, which prohibits selling within 200 feet of a school between 8:30 A.M. and 3:30 P.M. during days the schools are in session. Regulations under the police power must bear a substantial relation to the public health, safety, morals, comfort, convenience, or the general good and welfare of the community; otherwise, there would be an unwarranted suppression of private rights. The means employed in the exercise of the police power must have a rational relationship to the protection of the basic interests of society and be free from arbitrariness. Regulations must be reasonable. Marie's Launderette, Inc. v. City of Newark, 35 N.J. Super. 94 (App. Div. 1955). An ordinance that is prohibitory and discriminatory rather than regulatory, and which *371 lacks reasonableness, cannot be sustained. Ricca v. Board of Commissioners, 1 N.J. Super. 139 (App. Div. 1948). It must be neither arbitrary nor discriminatory. The object sought to be accomplished must be balanced against the inconvenience which would be inflicted upon those whom the ordinance seeks to regulate. Gilman v. Newark, 73 N.J. Super. 562 (Law Div. 1962).
In the paragraph under discussion the protection of school children in their travels to and from school is a proper subject for the reasonable use of the police power. The safety of children near schools during school hours, the added congestion in the streets when the schools open and close, the quiet and freedom from distraction that are necessary for fruitful study, are all valid objects which the police power can protect. The particular regulation under discussion is a reasonable means of accomplishing these ends. An ordinance is reasonable unless it is unreasonable on its face or is shown to be unreasonable by extrinsic evidence. The party asserting the unreasonableness of the ordinance must prove it. The plaintiffs in this case have not shown this regulation to be unreasonable, and debatable questions as to reasonableness are not for judicial cognizance. Bellington v. Township of East Windsor, 32 N.J. Super. 243 (App. Div. 1954). In City of Newark v. Charlton Holding Co., 9 N.J. Super. 433 (Law Div. 1950), the court said:
"* * * `While such regulation may be considered drastic in its operation, the court is not at liberty to substitute its judgment for that of the municipality.' Peoples Rapid Transit v. Atlantic City, 105 N.J.L. 286 (Sup. Ct. 1929), affirmed Parlor Car De Luxe Coach Co. v. Atlantic City, 106 N.J.L. 567 (E. & A. 1930). (at p. 440)
A city ordinance in New York that prohibited the selling of ice cream and confectioneries by a peddler within 250 feet of a school between the hours of 8 A.M. to 4 P.M. was held to be a valid exercise of the police power granted to the municipality. People v. George, 170 Misc. 707, 9 N.Y.S.2d 937 (Cty. Ct. 1939), affirmed 21 N.E.2d 888 (Ct. App. 1939).
*372 In Jones v. Haridor Realty Corp., 37 N.J. 384 (1962), Justice Francis said:
"* * * But the private right is not absolute. It is subject to the reasonable exercise of the police power, the reach of which is not capable of precise delineation. Exercise of that power by the State is valid so long as the regulation or limitation on the use of property bears a reasonable relation to public health, safety, morals, or general welfare. In appraising the constitutionality of the particular state action, the search is for facts and factors which reveal an evil adversely affecting the public in any of the categories mentioned. Once such an evil appears, it provides the occasion for the exercise of the police power, and the issue becomes whether the means employed by the Legislature to combat, ameliorate or eliminate it are reasonably designed to that end. If the means are reasonable (and the presumption is strong in that direction), the fact that some pecuniary detriment may fall upon individual property owners affected thereby does not signify an invasion of due process. [citing cases] In such case, questions of policy, wisdom and expediency are for the legislative and not the judicial branch of the government." (at pp. 391-392)
In this case there are evils, such as danger of injury to children near school buildings and distractions that are detrimental to good school work while the schools are in session. The means employed here to protect students from these evils are not unreasonable, and this regulation is a valid exercise of the police power.
The plaintiffs further contest the validity of paragraph 4 of section 21:29, which prohibits those covered by the ordinance from selling before 9 A.M. and after 9 P.M. Regulation of hours during which a business can operate is within the police powers and within the competency of a municipality possessed of ordinary powers. Barbier v. Connolly, 113 U.S. 27, 5 S.Ct. 357, 28 L.Ed. 923 (1885). In Hart v. Teaneck Township, 135 N.J.L. 174 (E. & A. 1947), Justice Wachenfeld said:
"This State has taken the lead in permitting the regulation of closing hours of different types of business, but the court has repeatedly pointed out the necessity of a reasonable basis for their regulation, free from discrimination. Falco v. Atlantic City, 99 N.J.L. 19 (Barber shop); Wagman v. Trenton, 102 N.J.L. 492 *373 (public auctions); Spiro Drug Service v. Union City, 130 N.J.L. 1, affirmed 130 N.J.L. 496 (drug store); Starkey v. Atlantic City, 132 N.J.L. 27 (drug store); Amodio v. West New York, 133 N.J.L. 220 (barber shop). In Crawford's Clothes, Inc. v. Newark, 131 N.J.L. 97, the Supreme Court considered a municipal ordinance which established closing hours for all retail establishments except restaurants, drug stores, delicatessen stores, etc. The ordinance was declared void since the distinctions sought to be made were arbitrary and also that some stores which were permitted to remain open sold articles which other stores closed by the ordinance ordinarily sold. Discrimination was held to be a fatal defect. * * *" (at pp. 176-177)
In the paragraph under consideration this fatal defect of discrimination is not present. There is a rational basis on which a distinction can be made. The prohibition applies to all peddlers. That itinerant merchants are a class apart from other merchants is an obvious fact. All persons in the same business, peddling, are here treated alike.
The question to be resolved is whether this paragraph is a reasonable regulation or whether it is arbitrary and discriminatory in favor of local merchants. In Falco v. Atlantic City, 99 N.J.L. 19 (Sup. Ct. 1923), the Court said:
"* * * If it be reasonable to set a closing hour, and we think it plainly is, that hour must be left to the fair discretion of the municipal authority. * * *." (at p. 21)
The court also added that the determination will not be disturbed unless clearly unreasonable. In Amodio v. Board of Commissioners of West New York, 133 N.J.L. 220 (Sup. Ct. 1945), Justice Heher said:
"* * * The legislative authority has a broad discretion in the means employed to advance the public health and safety. It may, in the common interest, provide for wholesome conditions of work, if the measure is not beyond the bounds of reason. West Coast Hotel Company v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703. And reasonable limitations upon the hours of service is a health regulation within the domain of the police power. Bunting v. State of Oregon, 243 U.S. 426, 37 S.Ct. 435, 61 L.Ed. 830. The regulation in question has specific relation to the competency of the workmen; and this is a proper concern of government. * * *" (at p. 225)
*374 In People v. Kuc, 272 N.Y. 72, 4 N.E.2d 939, 107 A.L.R. 1272 (N.Y. App. 1936), an ordinance forbidding the sale of newspapers after 9 P.M. on the streets, but allowing sales in stores, was held to be void because it only applied to the sale of newspapers. The court said that the time of sale can be regulated to prevent interference with the peace, comfort and repose of the inhabitants of the city during the hours they might be expected to be asleep. That court also noted that reasons understandable enough when all street selling is prohibited cannot be advanced to support a regulation that applies to only one type of peddling.
There are several cogent reasons why the regulation under consideration here is a valid exercise of the police power: the welfare of the vendors themselves, the protection of the peace and comfort of the community during the night, and that at night pedestrians are more difficult to see. People going to and from the vehicles of such vendors stopped on the public roadways are endangered by this lack of visibility. It is common knowledge that such vendors very often stop their trucks in the middle of the roadway, necessitating prospective customers to step out into the street from behind parked cars to be serviced, thus increasing the risk of mishap from other vehicles. Also, while people are reluctant to open their doors to strangers, they are more apt to listen to a person purporting to be a salesman and to let him into their homes, thus giving criminals the means of gaining easy access to homes in the nighttime. The court takes judicial notice that the employees of plaintiffs do not enter any premises for the sale of their products. However, the ordinance applies to all peddlers without distinction. Safety regulations which prohibited vendors from parking to sell to customers who were occupants of vehicles on the public highway have been upheld as valid. Borough of Harrington Park v. Hogenbirk, 52 N.J. Super. 223 (Cty. Ct. 1958). Also a regulation which prohibited parking for the purpose of selling and delivering goods to a consumer was upheld as a reasonable regulation for the protection of the health of children who may be injured in the *375 street while going to such vehicle. England v. Township Committee of Millburn, 122 N.J.L. 462 (E. & A. 1939). When there is a legitimate end that is encompassed within the police power, and the means invoked to accomplish that objective are not unreasonable, then the regulation is valid.
"* * * Where the subject is comprehended in the police power of the state, debatable questions as to the reasonableness of the measure are not for judicial cognizance. * * *" Schmidt v. Board of Adjustment, Newark, 9 N.J. 405, 416 (1952).
The fact that the police power employed to reasonably regulate a problem affecting the public interest might also concurrently be for the private benefit of some is of no consequence. Two Guys from Harrison, Inc. v. Furman, 32 N.J. 199 (1960). The regulation of the hours of sale in the ordinance under consideration is reasonably related to the public health, safety and welfare and is valid.
The plaintiffs next urge the invalidity of paragraph 6 of section 21:29, which prohibits parking for longer than the time it takes to make a sale to a customer. This does not mean, as plaintiffs contend, that a sale to only one customer can be made and then the vendor must leave the area. A reasonable interpretation of this paragraph, in which counsel for the City of Hoboken acquiesces, is that this paragraph only prohibits parking in one place for a long period of time. This interpretation makes the regulation a reasonable one, necessary for the safe and orderly flow of traffic, and it is, therefore, a reasonable and valid exercise of the police power. See Borough of Harrington Park v. Hogenbirk, and England v. Township Committee of Millburn, supra.
It is a fundamental constitutional doctrine that when there is a delegation of legislative power, the ordinance must provide a standard for the exercise of the delegated power. Such standard may either be expressed or implied from the legislation as a whole, and it is necessary so that what is done under the delegation is in conformity with the intent of the enacting body. Switz v. Kingsley, 37 N.J. 566 (1962).
*376 The trend today is toward wider latitude in the definition of what is an adequate standard. As Justice Jacobs pointed out in Ward v. Scott, 11 N.J. 117 (1952):
"* * * the exigencies of modern government have increasingly dictated the use of general rather than minutely detailed standards in regulatory enactments under the police power. * * *" (at pp. 123-124)
But that some standard be present or be ascertainable from the enactment is still a requirement of our law. Tp. of Raritan v. Hubb Motors, Inc., 26 N.J. Super. 409 (App. Div. 1953). The discretion vested in the delegated authority must not be absolute. It must be limited and governed by a norm or standard set out in the enactment, for guidance in its application to all persons. Ibid. In ascertaining the presence of standards and norms to support delegated power, it is fundamental that one is not confined to the four corners of the particular section, but the entire act must be examined in the light of its surroundings and objectives. Also, the standards need not be set forth in express terms, if they may reasonably be inferred from the ordinance taken as a whole. In re Berardi, 23 N.J. 485 (1957). In the case sub judice, section 21:26 of the ordinance provides:
"Following the filing of the application a copy thereof shall be sent by the License Inspector to the Director of the Department of Public Safety of the City of Hoboken who shall verify the moral character of the applicant by causing his fingerprints to be taken and a photograph made, and based on his findings, shall either recommend his approval or disapproval of the application. Upon the approval of the application and payment of the fee the license shall be issued by the License Inspector * * *."
As can be readily seen, there are no express standards to guide the Director of the Department of Public Safety in his determination of what constitutes the moral character of the applicant. Also, in looking at the ordinance as a whole, there is no indication as to what the Director must look for in making his determination. The enactment tells us that it is for the *377 prevention of dishonest business practices and to protect the citizenry from harm and annoyance; it tells us that the applicant must file a long list of minutely detailed facts with his application, including whether he has been arrested or convicted of any crime. But from looking at all these factors and at the rest of the enactment, it still is not clear what standard the Director of Public Safety must follow. Must the moral character of the applicant be merely satisfactory, or must it be highly satisfactory, or must it be without any blemish whatsoever. Does it mean good, bad or indifferent moral character? These questions are not answered by an examination of any part of the ordinance or of all of it. Some minimal standard to guide the discretion of the officer in the use of his delegated power is requisite. In Ward v. Scott, 11 N.J. 117 (1952), the Supreme Court reviewed a long list of cases dealing with standards that have been upheld as meeting this minimum requirement of due process. Such vague and elusive words as "satisfactory," Moyant v. Paramus, 30 N.J. 528 (1959), and "good," Brielle v. Zeigler, 73 N.J. Super. 352 (Law Div. 1962), in reference to moral character have been held to be a sufficient standard to uphold the delegated authority. In the Hoboken ordinance even such words as these are absent. A delegation of the legislative function to an officer without the promulgation of a standard to guide him in the use of his discretion is void. Moyant v. Paramus, supra; Ward v. Scott, supra; Jamouneau v. Local Government Board, 6 N.J. 281 (1951); Van Riper v. Traffic Telephone Workers' Fed. of N.J., 2 N.J. 335 (1949). As the court said in Gross v. Allan, 37 N.J. Super. 262 (App. Div. 1955):
"* * * The mere requirement of the approval of particular administrative or police officers does not spell out the standards, * * *." (at p. 268)
The Hoboken ordinance does not set out any standards, either express or implied, to guide the Director of the Department of Public Safety in determining whether or not to approve *378 an application for a license under it. The sections of the ordinance dealing with the requirements for a license are void as an unconstitutional delegation of the legislative function. Therefore sections 21:23 through 21:28, dealing with the requirements for licensing and the fees for it, are void and of no effect. Also section 21:30, dealing with the revocation of licenses, is now meaningless and must fall.
Since the licensing provisions of this ordinance are void for lack of a standard to guide the Director of the Department of Public Safety in the use of his discretion, there is no class of people to whom the regulations of section 21:29, supra, apply. The express intent of the municipality in section 21:32 is that if part of the ordinance is invalid, the whole ordinance shall not fall. Thus, the sections are to be looked at separately as to their validity. In Gross v. Allan, 37 N.J. Super. 262 (App. Div. 1955), Judge Conford said:
"* * * The question of severability of the invalid provision is one both of legislative intent, Yanow v. Seven Oaks Park, Inc., 11 N.J. 341, 361, 36 A.L.R.2d 639 (1953), and of whether the remaining provisions are functionally self-sufficient as containing the essentials of a complete enactment, Schait v. Senior, 97 N.J.L. 390, 393 (Sup. Ct. 1922). The two criteria must coexist. * * *" (at p. 269)
In Tagmire v. Atlantic City, 35 N.J. Super. 11 (App. Div. 1955), Judge Goldmann said:
"Except for these and a few other sections dealing with definitions, severability in case any provision be held illegal or unconstitutional, * * * the remainder of the sections, which have been described above, are invalid in light of the statute. Since all the sections are intimately related and form an integrated whole, the entire ordinance must be held invalid." (at p. 23)
In the ordinance in question the intent that the sections be severable is clear, but the problem is whether without the licensing provisions the ordinance makes sense. Without the licensing provisions, the ordinance is not self-sufficient. To eliminate the word license or licensee from the separate *379 paragraphs of section 21:29 would leave the regulations a meaningless shell. To substitute another word in the place of licensee, such as vendor or peddler, to make the regulations meaningful, would be to rewrite the ordinance. This is not the duty of the courts but belongs strictly to the realm of the municipality. The words of Judge Goldmann are clearly applicable to this ordinance, "Since all the sections are intimately related and form an integrated whole, the entire ordinance must be held invalid." Tagmire v. Atlantic City, supra.
For the reasons stated, the court finds the entire ordinance to be invalid. An order for judgment in conformity with these findings may be submitted.